BOYER, C.
This is an appeal from a judgment in favor of plaintiff in a suit on an accident and health policy.
The points made are (1) the court erred in refusing to give defendant’s peremptory instruction at the close of all the evidence: (2) the court erred in excluding testimony; (3) the court erred in giving instructions at the instance of plaintiff; and (4) the verdict is excessive. "We will state the facts in conjunction with a discussion of the points, and first direct our-attention to the question as to whether a demurrer to the evidence should have been sustained.
*778 Plaintiff suffered an injury to his left eye, and appellant insists that under the evidence the injury was*not “effected accidentally,” but was the consequence of plaintiff’s voluntary act in holding a coffee pot to be welded by the use of an acetylene torch, and “there is no evidence of a slip or mishap by the operator of the torch or respondent in the act of applying said torch or holding said coffee pot which caused a piece of metal to strike respondent’s eye.” The record discloses that plaintiff was injured in the following manner: Men were in the street in front of plaintiff’s house engaged in the work of laying a pipe line. One of the men was using an acetylene torch or blow pipe which was employed to solder the pipe. The handle of plaintiff’s coffee pot was broken and he desired to have it mended and came out upon the street on his way to a shop for that purpose, but instead of going to the shop he asked the man in the street, who was using the blow pipe, if he could mend it; the man said “yes,” and requested plaintiff to hold the handle and coffee pot in position while the torch was applied. Plaintiff held the coffee pot and the handle in place, and the man proceeded to apply the torch and solder to the broken part. During this process some substance, described by plaintiff as a piece of steel or some other metal, struck plaintiff in the left eye. He dropped the coffee pot and ran into his house holding his eye; it was causing him severe pain. There were some men there who after a time turned back the lid of his eye and with a silk handkerchief removed a piece of metal therefrom.
It is insisted that the injury was the result of ordinary means voluntarily employed, and that the record is barren of any evidence showing that, while the torch was being applied, anything unforeseen or unusual intervened which caused a spark or piece of metal to strike plaintiff’s eye, and that it can very well be said that the injury was the natural and probable consequence of what was done. It appears to be the trend of the argument of appellant that there was nothing unusual, unforeseen, unexpected or unintended which occurred in the process of mending the article, but that it was done as intended and therefore the injury which resulted to plaintiff was not “effected accidentally.” It is.urged that the case falls within the rule applied in Caldwell v. Travelers Ins. Co., 305 Mo. 619, 267 S. W. 907, and other cases following it. "We think the position of appellant on this point is untenable and that the rule applied in the Caldwell case does not fit the facts and issues in the case at bar. The act of mending the coffee pot was voluntary and intentional, but the thing which caused the injury, that is, a flying spark or piece of metal striking plaintiff in the eye, accompanied the act and was wholly unexpected, unintended, and unforeseen and properly falls within the category of things accidental. It could properly be said and found that the injury was “effected accidentally” on account of *779 mischance, slip or mishap which occurred during the performance of the act itself. There is no room, therefore, in this case for the application of the rule applied in the Caldwell case, supra.
In the present case the terms of the policy provide that the company “does hereby insure Daniel Jennings, herein called the insured, as a musician, . . . against loss of life, limb, limbs, sight, or speech and hearing, resulting directly and independently of all other causes for a bodily injury which is sustained while this policy is in force and which is effected accidentally (excluding suicide, sane or insane), herein called ‘such injury’ in the initial principal sum of three hundred dollars; and against loss of time resulting either from ‘such .injury’ and beginning within thirty days from date of accident or from sickness ... in the sum of ten dollars per week, herein called the weekly indemnity.” Indemnity for the loss of the sight' of one eye was to be one-half of the principal sum. Provision is made for payment on account of total or partial loss of time according to the following sections:
“Section B. The company will pay indemnity at the rate of the weekly indemnity for each whole day, not exceeding two years, that the insured is wholly disabled and prevented solely by such injury from performing any and every duty pertaining to his business or occupation and is not engaged in or performing the duties of any other business or occupation and is under the regular treatment of a licensed physician.”
“Section C. The company will pay indemnity at the rate of one-half of the weekly indemnity for each whole day, not exceeding six months, that the insured is partially disabled and prevented solely by such injury from performing important daily duties essential to his business or occupation and is under the regular treatment of a licensed physician.”
Plaintiff’s evidence is to the effect that he ivas totally disabled from following his vocation as musician from the time of his injury, August 29, 1930, and that said disability would continue on account of loss of the sight of his eye. It is admitted that the policy was in effect at the time of the injury, and under the evidence most favorable to plaintiff it was competent for the jury to determine under proper instructions whether plaintiff in fact sustained an injury “effected accidentally” and the amount which he should recover for said injury and for loss of time occasioned thereby. The demurrer was properly overruled. [Cameron v. Mass. Protective Assn., 220 Mo. App. 780, 786; Curry v. Fed. Life Ins. Co., 221 Mo. App. 626, 629.]
It is next insisted that the court erred in excluding the testimony of plaintiff’s attending physician, on objection of the plaintiff. The correctness of the ruling turns on the question as to Avhether plaintiff *780 waived tbe privilege to object to tbe testimony of the doctor. Plaintiff alleges in the petition that he visited an eye specialist and was treated for his injury once a week and “that said eye specialist has informed plaintiff that the sight of said eye is a practical total loss for life.” Counsel for plaintiff, in the opening statement, made repeated reference to the treatment of plaintiff by the doctor, and to reports compiled by the doctor stating the kind, character, and extent of plaintiff’s injury which were on different occasions sent to the company; and that plaintiff was “informed by the doctor the eye was a total loss to light and dark and since then he has lost complete sight.” Plaintiff testified that he had a “cataract on my left eye and it has gone out on me;” that he went to Dr. Love immediately after his injury, who continued treatment thereof until November 27, for a period of three months; that during the term of the treatment he took blanks to the doctor to fill up; these were sent to the company. To sustain his case plaintiff put in evidence, over the objection of defendant, various reports of the doctor which made reference to the nature of his injury, and the result- of examination and diagnosis. Among questions to be answered and which were answered in these reports were the following: “Name of patient? Residence? Date of first visit? What disease has patient now? Has patient any chronic disease ? Any specific disease ? Is patient now necessarily confined to house or apartment by sickness? Give date of your last professional service to patient? Describe injury? Is there external evidence? Is disability now total or partial? Are you filling claim blanks of other companies for this patient?”
Dr. Love was called as a witness by defendant and testified without objection that his specialty in practice included the eye; that he had treated- the plaintiff’s left eye since August and had made an examination at the time. When asked to state what he found wrong with the eye objection was made and sustained. Defendant offered to prove by the witness that at the time he made the examination on August 29, 1930, the date of the accident, he then found a well-developed cataract in the left eye of the plaintiff, and that he was afflicted with a condition known as iritis of the left eye. An objection to the offer was sustained. The doctor further testified that he signed the reports which had been offered in evidence. He was asked about the correctness of the answers made to questions contained in the reports and was not permitted to answer the questions on objection of the plaintiff, and was prohibited from testifying about the contents of reports made by him which had already been introduced in evidence and read to the jury.
In view of the foregoing, we think that plaintiff waived the privilege of objecting to the testimony of his physician. Evidently, plaintiff cannot be permitted to profit by the alleged and proved statements *781 of his physician concerning the nature and character of his ailment, and at the same time object to the testimony of the physician upon the same subjects. Plaintiff! waived the privilege of secrecy between himself and his doctor by testifying to statements made to him by the physician, and by placing in evidence the hearsay testimony of the doctor contained in his written reports specifying the ailment with which plaintiff was afflicted at stated times. In common fairness to defendant the court should have either excluded all testimony of facts offered by plaintiff purporting to come from the doctor, or should have permitted the doctor to testify. The privilege extended to a patient is intended to protect him in his confidential relationship as a shield of secrecy, and was never intended to be used as a weapon of offense or as a means of suppressing the truth, especially when the patient himself purports to reveal the communications said to be under the protection of the shield. Cases illustrative of the point and which sustain the ruling are collected and reviewed in Epstein v. Penn. Railroad Co., 250 Mo. 1, 19 et seq., 156 S. W. 699; Ryan v. Met. Life Ins. Co., 30 S. W. (2d) 190, 194; Blankenbaker v. St. Louis & S. F. Ry. Co., 187 S. W. 840.
The instructions complained of are numbered 1, 2, and 3. Instruction 1 purports to cover the case and directs a verdict and provides in part that if the jury found and believed from the evidence “that the plaintiff as the result of an accident alone has suffered injury resulting in the loss of an eye and made due proofs to defendant and gave defendant due notice under the policy, then your finding must be for the plaintiff in such an amount, if any, as you find and believe from the evidence is due him for the loss of the sight of his eye, if any, and in the further sum as you find is due him for loss of time on account of said injury, if any, and loss of said eye, if lost.”
It is said that the instruction is erroneous because it omits any reference to the pleaded defense of misrepresentation. There is no reference to such defense, but we find that the omission is cured by defendant’s instruction which fully covered the subject. [State ex rel. Ins. Co. v. Cox, 307 Mo. 194, 270 S. W. 113.] However, it is correctly asserted that the instruction is erroneous because it contains an assumption of the loss of time on account of the injury and does not require the jury to find that plaintiff did lose time under the conditions upon which indemnity was agreed to be paid. Those conditions are set forth in section B and section C quoted above. Under section B the condition is “that the insured is wholly disabled and prevented solely by such injury from performing any and every duty pertaining to his business or occupation and is not engaged in or performing the duties of any other business or occupation and is under the regular treatment of a licensed physician. ’ ’ Section C provides for partial loss of time only on condition “that the insured is *782 partially disabled and prevented solely by such injury from performing important daily duties essential to Ms business or occupation and is under the regular treatment of a licensed physician.” Further, by the terms of the policy, the loss to be compensable must be one ‘ ‘ resulting directly and independently of all other causes for a bodily injury Avhieh is sustained Avhile this policy is in force and which is effected accidentally.” It is evident that the instruction does not require a sufficient finding to authorize a verdict and that it should conform to the conditions of the contract.
Instruction 2 in its present form is not approved. If the subject-matter is again submitted to the jury the instruction should be redrawn so there will be no doubt as to what the jury must find in order for plaintiff to avoid the effect of a misrepresentation. In its present form the instruction might justify the jury in excusing a misrepresentation upon a finding alone that it contributed to “said accident. ’ ’
Instruction No. 3 authorized recovery for vexatious refusal to pay, and the verdict of the jury included an award of one hundred dollars for attorneys’ fee. Under the facts in this ease it does not appear that such instruction was authorized because prior to suit defendant had no notice that plaintiff claimed that he had lost the sight of his eye, and his claim theretofore filed with the company indicated merely a demand for loss of time on account of an infection of the eye. Whether the defense and refusal to pay is vexatious must be determined in view of the facts existing at the date of suit. It also appears from the facts of record that defendant had reasonable ground upon which to defend the alleged cause of action because, plaintiff claimed to have lost the sight of his eye on account of an injury sustained August 29, 1930, and the evidence discloses that the plaintiff on different occasions prior to said alleged injury had received treatment for the same eye, contrary to statements made by him in his application. Under the circumstances, defendant should not be penalized for making the reasonable defense of misrepresentation.
There is a belated attack directed at the sufficiency of the petition. Under the circumstances we do not find the complaint justified. The petition was sufficient to notify defendant of the cause of action which it was called upon to defend and apparently no objection was made thereto until after verdict. Unfortunately, we are deprived of the benefit of a brief on behalf of respondent. The errors which have been noted require that the judgment be reversed and the case remanded. The commissioner so recommends.
Campbell, C., concurs.
PER CURIAM:
The foregoing opinion of Boyer, C., is adopted as the opinion of the court. The judgment is reversed and the cause remanded.
All concur.