· F. A. BUROW. v. ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, and RED LINE SERVICE, INC., a Corporation, Defendants, RED LINE SERVICE, INC., a Corporation, Appellant.

F. A. BUROW v. ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, and RED LINE SERVICE, INC., a Corporation, Defendants, ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, Appellant.—100 S. W. (2d) 269.

Division One, December 14, 1936*

*NOTE: Opinion filed at September Term, 1935, April 23, 1936; motion for rehearing filed; motion overruled November 12, 1936; motion to transfer to Court en Banc filed; motion overruled at September Term, 1936, December 14, 1936.

*T. E. Francis, B. G. Carpenter* and *Wm. H. Allen* for St. Louis
Public Service Company.

*Moser, Marsalek & Dearing* for Red Line Service, Inc.

*Everett Hullverson* for respondent.

GANTT, P. J.—Action for personal injuries. The automobile in which plaintiff and wife were riding collided at three-thirty P. M. on October 13, 1931, with a motorbus owned by defendant Red Line Service, Inc. The collision occurred five miles west of St. Louis and on a highway known as the St. Charles Road. Plaintiff and wife were injured. The wife recovered from the Red Line Service, Inc. In that case there was a verdict for the Public Service Company. We refer to the opinion in that case for a complete statement of the facts. [79 S. W. (2d) 478.] In this case the plaintiff also sued for loss of the services of his wife and for damages to the automobile. Judgment for $15,000.

The petition alleged that the Public Service Company negligently constructed and maintained its track rails above the surface of the

highway and thereby caused the collision. The answer was a general denial.

I. It is contended that the court should have directed a verdict for the Public Service Company at the close of all the evidence. The pertinent facts follow:

In the spring of 1930 there was a concrete slab twenty feet wide in the center of said highway. On each side of the slab and in the highway was the Public Service Company's tracks. The highway was a part of the State highway system. At said time the State Highway Commission notified the Public Service Company that it had decided to widen the concrete slab ten feet on each side thereof. It suggested that the company should remove the ballast from under the tracks, adjust the tracks to the grade fixed by the commission, remove rotten ties, replace them with sound ties, and place concrete under, between and to the top of the ties, which concrete would be furnished by the commission. The Public Service Company agreed in writing to do that part of the work. It did the work under the supervision of the Highway Commission. The commission did the balance of the work. In placing the top surface of the highway between the rails, the Highway Commission's contractor sloped the concrete upward from the bottom of the rails to the center line between the rails. Thus the tops of the rails were three inches above the surface of the highway next to and between the rails. The widening of the highway affords two lanes for eastbound traffic and two lanes for westbound traffic. Plaintiff was driving the automobile east in the south center lane. Its right wheels were between the rails of the south track. He attempted to pass an automobile. In doing so the right rear wheel of plaintiff's automobile caught on the north rail of the track, which caused it to skid on the wet pavement to the "extreme north side" of the highway where it collided with the westbound motorbus of defendant Red Line Service, Inc.

Plaintiff argues that the pavement was widened under a mutual contract between the State Highway Commission and the St. Louis Public Service Company, and for that reason the company is liable to plaintiff for said injuries.

Under the common law it is the duty of a street railway company to so construct and maintain its tracks in city streets that the public may use them with reasonable safety. Usually this duty is expressly provided for by contract, franchise, ordinance or statute. Furthermore, there are cases holding that a company cannot avoid liability upon the ground that the track was constructed and maintained under the supervision of the city. In those cases it was ruled that the city could not bind the public by requiring a construction and maintenance which rendered the track unnecessarily dangerous.

1096

[Groves v. Louisville Ry. Co., 52 L. R. A. 448; Slater v. North Jersey St. Ry. Co., 15 L. R. A. (N. S.) 840; Brobston v. Burgess and Town Council, 54 A. L. R. 1285, 1291.] But the city controls the streets in its corporate capacity. On the other hand the State Highway Commission controls the State highways as a governmental agency. Its control is fixed by the Constitution as follows:

"All the highways and bridges to be constructed and improved with the funds herein provided, shall be constructed, improved and maintained under the direction and supervision of the State Highway Commission, which shall determine the width of right-of-way and sur- · face, and the type and character of construction, improvement, and maintenance." [Sec. 44a, Art. IV, Const.]

In the face of this constitutional provision the Public Service Company could not interfere with either the plan or construction in question. If so, the company was under no duty to the public with reference to the widening of the pavement. Absent said duty, it could not be liable to plaintiff for injuries. The contract between the State Highway Commission and the Public Service Company only fixed the work to be done by the company under the supervision of the commission. Plaintiff does not complain of the work done by the company. He charges negligence in surfacing the pavement between the rails. The commission's contractor did that work. The court should have directed a verdict for the company.

■ II. Defendant Red Line Service, Inc., contends that there was no substantial evidence tending to show that it negligently failed to swerve the bus and for that reason the court erred in submitting said issue to the jury.

The bus was swerved to the right. The petition did not charge that it was negligently swerved to the right when it should have been swerved to the left. That issue was not submitted to the jury. The court directed a verdict against the Red Line Service, Inc., if it negligently failed to stop, or slacken the speed of, or swerve the bus.

The automobile was driven east in the south center lane about twenty-five feet from the north edge of the pavement when it turned to pass the other automobile. The bus was driven west three feet from the north edge at from thirty to forty-five miles an hour. The automobile commenced to skid when the bus was east of it from sixty to eighty feet. It skidded in a northeast direction, swung around and faced west on the "extreme north side" of the pavement. By that time plaintiff, the driver, had control of the automobile and drove it several feet west before the collision. He argues that the bus should have been swerved left instead of right. But how could the bus driver have known that plaintiff would not recover control before the automobile reached the north side of the pavement? If he recovered con-

trol before said time, and while the automobile was in the north center lane, the bus might have collided with it by swerving to the left. Of course, it was physically impossible for the bus driver to instantly swerve the bus directly south and onto the south side of the pavement. The record presents no evidence tending to show that the bus driver knew, or, by the exercise of the highest degree of care, could have known that plaintiff would not recover control until the automobile was on the "extreme north side of the road." The jury could only guess about the matter.

Plaintiff relies on the cross-examination of the bus driver, which follows:

"Q. By the way the only automobile you saw was the one that this fellow was trying to pass there? A. That is all.

"Q. There were your car and two others? A. Yes, sir.

"Q. And you could see, I guess, a half mile up the line there? A. Yes, sir.

"Q. And there was no other traffic with the exception of the two Ford automobiles and yours? A. There were some on my side of the road, but they were away up the hill.

"Q. But none on the other side? A. No, sir.

"Q. You say you only had three feet to swerve to the right? A. Yes, sir.

"Q. And even then you hit the man or he hit you, which ever you prefer to say, or you came in contact with the automobile? A. Yes, sir.

"Q. Even in swerving the three feet? A. Yes, sir.

"Q. Did it ever occur to you that you might swing over to the left where the space was empty and avoid the accident? A. There wasn't, or time enough.

"Q. The automobile was in front of you, and the entire south side of the highway was empty wasn't it? You have just done saying so. The car was in your pathway before you hit it, wasn't it, on the north side of the road? A. He took up a lot of space on the road.

"Q. It was coming over to the north side all the time? A. Yes, sir.

"Q. And then as it is you did swerve to the right, you did hit it? A. Yes, sir.

"Q. But you never considered that you could turn to the left from the way he was coming and out of his path and escape colliding with him? A. No, sir."

This testimony of the bus driver on cross-examination is not substantial evidence tending to show that the bus should have been swerved to the left instead of the right. The instruction was erroneous and prejudicial.

The judgment against the St. Louis Public Service Company should

be reversed, and the judgment against the Red Line Service, Inc., should be reversed and the cause remanded. It is so ordered. All concur.