Walter G. Wells, Appellant, v. City of Jefferson, a Municipal Corporation, and Missouri Power & Light Company, a Corporation.—132 S. W. (2d) 1006.

Division One, November 3, 1939.

240

*David W. Peters* and *Scott Peters* for appellant.

*John O. Bond* for City of Jefferson.

*Irwin, Bushman & Buchanan* for Missouri Power & Light Company.

HYDE, C.—This is an action for $10,000 damages for personal injuries, alleged to have been caused by a defective condition of Clark Avenue along street car tracks therein. At the close of all the evidence, the court directed a verdict for defendant Missouri Power & Light Company. Plaintiff's case against defendant City was submitted to the jury and its finding was for the defendant. Plaintiff has appealed from the judgment entered.

The Missouri Public Service Commission in November, 1933, with the consent of defendant City by ordinance, granted permission to defendant Power & Light Company to discontinue street car service and to establish bus service instead. Prior to the time plaintiff was injured, the City had commenced to remove the street car tracks from some of its streets but had not removed any tracks on Clark Avenue. Plaintiff's brief contains an assignment of error concerning the directed verdict for defendant Power & Light Company. Of course, this defendant's liability would depend upon whether its duty with reference to the track still existed. [Burow v. St. Louis Public Service Co., 339 Mo. 1092, 100 S. W. (2d) 269.] However, this assignment is not briefed; no further mention is made of it, either in the points and authorities or argument, and no case is cited which considered any similar state of facts. This constituted an abandonment of this assignment. [Clay v. Owens, 338 Mo. 1061, 93 S. W. (2d) 914; Homan v. Mo. Pac. Railroad Co., 334 Mo. 61, 64 S. W. (2d) 617.] Furthermore, if the city properly won (without prejudicial error) on the issues of negligence and contributory negligence, plaintiff, of course, could have no further rights against either defendant. It is, therefore, unnecessary to go into the facts concerning the taking over of the street car tracks by the City for salvage or otherwise.

Plaintiff's assignments of error, which are briefed, go only to

instructions, admission of certain evidence, and improper cross-examination. We find plaintiff's statement (challenged by the City by motion to dismiss) to be sufficient for considering the assignments briefed, and the motion to dismiss plaintiff's appeal is overruled. ■

Plaintiff assigns error "in receiving in evidence the record of a mere minute of the council of the City of Jefferson, which did not even import any final action, on the question of removing streetcar tracks from the city streets, dated February 3, 1934;" and "in receiving evidence of oral agreements entered into by and between officers of the defendant Missouri Power & Light Company, and the City of Jefferson concerning the removal of streetcar tracks from the city's streets." Plaintiff cites as authority on these assignments, Kolkmeyer & Co. v. City of Jefferson, 75 Mo. App. 678; J. C. Likes v. City of Rolla, 184 Mo. App. 296, 167 S. W. 645; Openchain-Boyer Co. v. Village of Mercer (Mo. App.), 17 S. W. (2d) 376; Eureka Fire Hose Mfg. Co. v. City of Portageville (Mo. App.), 106 S. W. (2d) 513; Lively v. Webb City (Mo. App.), 106 S. W. (2d) 517. These cases, cited in plaintiff's brief, all rule the question of what kind of record (of action of city council) it is necessary to make to establish liability against the city to pay money on contracts. Certain evidence is held insufficient for this purpose because of the requirements of Section 2962, Revised Statutes 1929; but that does not mean that it would be inadmissible for any other purpose. The evidence, complained of here, all went to the question of whether there was liability of the defendant Power & Light Company and could not be grounds for reversal of the judgment in favor of the City because there was no such contention of nonliability of the City in this tort action, and admittedly the City was liable (whether alone or jointly) if anyone was liable. Neither could the admission of this evidence be held prejudicial against plaintiff, on what is here presented for review, as between plaintiff and the Power & Light Company, both because plaintiff abandoned his assignment of error against the action of the trial court in directing a verdict for the Power & Light Company, and because the issues of negligence and contributory negligence were decided against him by the jury.

■ The negligence charged which was submitted against the City was that "wide, deep ruts or holes had been permitted to form on both the inside and outside of each of" the rails of a street car track; "that the presence in said street of said wide, deep ruts or holes rendered it unsafe for ordinary use, and that the defendant City of Jefferson, negligently permitted them to remain therein." It was also submitted that "the wheels of plaintiff's automobile dropped into some of these wide, deep holes or ruts in said street and that in endeavoring to extricate it therefrom it came out suddenly and he was with great force and violence hurtled across said street and collided with a large pole near the curb." The answer of both defendants contained a general denial and a plea of contributory negligence.

Plaintiff's evidence showed that on Clark Avenue, running north and south, there was a street car track near the center of the street with a switch track, by the side of the main track, beginning just south of the intersection with Miller Street, an east and west street. Clark Avenue was narrower north of this intersection than south of it, so that it was necessary for southbound traffic to turn somewhat to the east near this intersection. Clark Avenue was paved with bituminous asphalt, which was worn away to some extent on both sides of the rails of these tracks. According to plaintiff's evidence, there were holes or ruts, next to the rails, that were from four to five inches wide and four to six inches deep, and it had been in that condition two or three months. The City's evidence was that Clark Avenue was thirty feet wide south of this intersection; that there was a space twelve and one-half feet wide for travel between the west rail and the west curb; that the rails of the tracks were about level with the surface of the street; and that the holes in the pavement along the rails were only "an inch or two" in depth, making "merely rough" places, not deep enough "to deflect the course of the car."

Plaintiff said that, on April 21, 1934 (after the tracks had not been used for operation of street cars for several months) at 7:00 A. M., he drove south on Clark Avenue to go to work. He was driving "between twenty-five and thirty miles per hour." He said that he saw a man he knew on the sidewalk and waved to him; that the wheel of his car got in a rut; that he "tried to get it out;" but that "the car went past the switch block and hit a telephone post," rendering him unconscious from a blow on his head. He had used Clark Avenue almost every day going to work and drove trucks over it in his work for several years. He "was familiar with the condition of the street at the point where the accident occurred," and "knew the holes were there." Plaintiff said: "There is no way you could go . . . after you pass the intersection unless you get one wheel in a track;" but one of his witnesses said: "A man could take his time and drive down the westerly side of Clark Avenue and not come in contact with the street car tracks anywhere between the intersection of Miller and Clark Avenue and the point where the accident occurred, providing there were no cars parked next to the curb." A witness for the City testified that he saw plaintiff's car before it reached the intersection; that it was on the wrong side of the street 200 feet away from him; that it was "on the wrong side of the track, altogether . . . never touched the track after it came in my sight;" that he "could not see anybody behind the wheel;" and that it "crashed through this pole, followed the curb line down and hit my car." Plaintiff said that the company, carrying the insurance on his car, paid the bill for fixing this witness's car.

Plaintiff's assignment of error, concerning instructions, is thus stated in his points and authorities: "That Instructions 4 and 5

conflicted, and 6, 7 and 8 were repetitions of Instruction 5, and served to emphasize contributory negligence on the part of plaintiff to such an extent as to make a comment on the evidence.'' Plaintiff's brief nowhere states what the conflict is claimed to be, and this would amount to an abandonment of that claim. However, we note that there is a conflict in that Instruction 4 states plaintiff's duty as ''ordinary care'' and ''reasonable care,'' while Instruction 5 requires that he ''exercise the highest degree of care.'' This is error in plaintiff's favor, of which he cannot complain, because the correct measure of his duty was ''the highest degree of care.'' [Baranovic v. C. A. Moreno Co., 342 Mo. 322, 114 S. W. (2d) 1043.]

■ Although not mentioned in his points and authorities, plaintiff's printed argument states that ''Instruction 4 is erroneous in that it imposes upon the plaintiff 'the duty of using oridinary care to *discern defects* in a street over which he is driving' (and further says) 'and if you believe from the evidence that plaintiff knew of said place and danger of using same, or by the exercise of ordinary care on his part could have known of it, and that plaintiff attempted to pass over or drive over said point, without using reasonable care' '' (this would be negligence). Plaintiff's argument then states that ''this imposed a greater burden upon plaintiff than was necessary'' because ''he was not bound at all hazards to discern defects in the streets; he is only bound to use ordinary care in effort to discern them.'' However, stating that the plaintiff had ''the duty of using ordinary care to discern defects,'' and that driving over the defective place (of which defect plaintiff knew or by the exercise of ordinary care could have known) without using reasonable care was negligence, obviously does not mean that he was ''bound to all hazards to discern defects in the streets.'' This contention must be overruled.

■ Concerning the complaint of overemphasizing the issue of contributory negligence by giving several instructions on it, our rule is to ordinarily follow the judgment of the trial court as to whether or not there was such overemphasis as to be prejudicial. Where the trial court has sustained a motion for new trial on that ground, we have usually affirmed its order. [Arnold v. Alton Railroad Co., 343 Mo. 1049, 124 S. W. (2d) 1092; Pearrow v. Thompson, 343 Mo. 490, 121 S. W. (2d) 811.] Nevertheless, ''repetition in or elaboration of the same proposition of law in different instructions is not ordinarily sufficient grounds for reversing and remanding a cause upon appeal.'' [Arnold v. Alton Railroad Co., supra; Rath v. Knight (Mo.), 55 S. W. (2d) 682, and cases cited.] Since the trial court decided against the contention of prejudicial effect from such repetition, and since plaintiff's evidence as to his speed, in view of his knowledge and what he was doing, is not a very strong showing as to the exercise of the highest degree of care on his part, we overrule this contention here.

■ Plaintiff's remaining assignment of error is "permitting counsel for defendants to persist in their efforts to show that plaintiff was suffering from syphilis, during their cross-examination of the Drs. Enloe and the plaintiff." Counsel for defendant Power & Light Company offered to show on cross-examination of both doctors who treated plaintiff (both of whom were called as witnesses by plaintiff) that plaintiff was being treated for this disease both before and after the accident. One of plaintiff's complaints of the result of his injury was continuous pains in his head. Plaintiff said that he never had a headache before the accident but "have had it ever since and have it now." He also testified that he went to Barnes Hospital (St. Louis) for treatment in October, 1934 (six months after the accident); and when asked if he had "any disease of any kind," he answered: "I couldn't say if I did or didn't." Plaintiff also said that he had not been able to work since his injury; and that "the doctors advise me not to work as long as my head bothers me." From the testimony of the first doctor, who treated plaintiff after the accident it appears that this doctor had also treated him for some time prior to the accident; that he continued to treat him for several months after the accident; and that the injury was not the sole reason for treating him. The court ruled: "The doctor can answer this question, as to whether he treated him subsequent to the injury for something else besides the injury, but he don't need to tell what it was." Both doctors said that a syphilitic condition might bring about headaches. The second doctor began to treat plaintiff about September, 1934, and sent him to Barnes Hospital. He testified that he made a Wassermann test but was not permitted to answer as to what it showed. Instead of error against plaintiff, we think that the error was in unduly limiting the cross-examination of plaintiff's doctors. Plaintiff was seeking to recover for his condition after the accident on the theory that it was due to the accident, and that he was still unable to work because of his condition caused by the accident. Defendants were entitled to have the jury know the whole truth about his condition. The nature and extent of this condition and its probable causes were a proper subject of cross-examination. The privilege given by Section 1731, Revised Statutes 1929, is personal to the patient (not a privilege of the doctor) and is waived by voluntarily calling the doctor to testify in plaintiff's behalf about his condition, or by plaintiff's own voluntary testimony about his condition, his treatment and what his doctors advised about it; and calling one doctor waives it at least as to all others who treated a plaintiff, in a personal injury suit, after the time of his injury. As to what amounts to waiver and its extent see Epstein v. Pennsylvania Railroad Co., 250 Mo. 1, 156 S. W. 699; State v. Long, 257 Mo. 199, 165 S. W. 748; Michaels v. Harvey (Mo. App.), 179 S. W. 735; McPherson v. Harvey (Mo. App.), 183 S. W. 653; Priebe v. Crandall (Mo. App.), 187 S. W. 605; Blanken-

baker v. St. L.-S. F. Railroad Co. (Mo.), 187 S. W. 840; Weissman v. Wells, 306 Mo. 82, 267 S. W. 400; Jennings v. National Life & Accident Ins. Co., 226 Mo. App. 777, 46 S. W. (2d) 226; see also 5 Wigmore on Evidence, 201, chap. 84, secs. 2380-2391.] Clearly plaintiff waived the privilege in this case as to his condition after the accident and its causes. The judgment is affirmed. *Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur.