Louis VANACEK, Respondent,

v.

ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, Appellant.

No. 48474.

Supreme Court of Missouri, En Banc.

June 11, 1962.

Rehearing Denied July 16, 1962.

William M. Corrigan, St. Louis, for appellant.

Edmund W. Albright, William L. Mason, Jr., St. Louis, for respondent.

HYDE, Judge.

Plaintiff obtained judgment for $50,000.00 for personal injuries, sustained when the motorcycle he was riding as a member of the Metropolitan St. Louis Police Force went out of control, allegedly as a result of a defect existing in the surface of North Broadway between the rails of a streetcar track. Defendant has appealed and contends that the trial court erred in refusing to direct a verdict for it at the close of all the evidence for the reason that defendant had no duty to plaintiff to maintain the street at the place in question at the time of his injury.

An opinion written in Division One did not receive a majority vote and the case was transferred to Banc. The following statement of facts from the divisional opinion is set out, without quotation marks, and adopted with some additions. In April 1940 the Board of Public Service of the City of St. Louis issued a permit of indefinite duration (in effect at the times in question) to defendant to continue operation over and maintenance of existing street railway tracks and appurtenances located upon certain public streets in St. Louis including North Broadway. By charter and ordinance, St. Louis required defendant to keep the street between the rails of its tracks, and to the extent of at least 12 inches outside each rail, in perfect repair and as nearly on a level with such rails as practicable.

In July 1956 the Missouri Public Service Commission, pursuant to defendant's application and after extensive findings of fact, entered its order permitting defendant "to abandon the street railway tracks of its Broadway car line (Route No. 40) and all streetcar service thereover," except tracks used in connection with the operation of other streetcar lines (not here involved) and upon the condition that defendant substitute motorbuses not later than September 30, 1956. That order was dated July 17, 1956, and was effective July 27, 1956. Seven days after the order's date, defendant and the city entered into a contract which recited defendant's application to the commission, the commission's order, and that the city and the company desired to agree "for the purpose of settling and determining the Company's obligations at the time of the abandonment of said street car service pursuant to said Commission proceedings, with respect to the abandoned street car tracks of the said Broadway Car Line, located in paved streets in the City of St. Louis, the disposition of poles, wires, tracks, and other appurtenances thereof, and the question of title to such property, and other matters * * *." The agreement then provided that when the company abandoned the tracks and service on route 40, defendant was to give formal written notice thereof to the Director of Streets and Sewers and deliver a check to the city in the sum of $125,780.00 to be used by the city in maintaining, surfacing and otherwise improving the abandoned track areas and any remainder would be used to repair roadway paving at bus stops. The agreement further provided that after such formal notification the city would assume responsibility for any resurfacing of the abandoned car tracks and title to all said tracks including the rails, ties, and other track fixtures and appurtenances "is hereby vested to the City and the City assumes full possession and control thereof (this agreement being construed as a quitclaim deed thereto), and from said date forward the Company and its successors and assigns are relieved of all future liability of the maintenance, repair or removal of said tracks and all paving obligations incidental thereto * * *."

In a letter dated August 31, 1956, defendant formally notified the city of its abandonment of service and trackage as of August 20 and enclosed a check to the city in the amount above noted, which check was received by the comptroller on September 4, 1956. However, the city had made no changes or repairs in the area where plaintiff was injured before the time of his injury.

In the afternoon of October 13, 1956, plaintiff, in pursuit of a suspected speeder, was operating his motorcycle north on North Broadway near Dickson Street and between the rails of the northbound streetcar track when he lost control of the motorcycle, fell from it and was injured. As plaintiff proceeded north for four or five blocks his motorcycle was about midway between the rails of the northbound streetcar track and he was gaining slightly on the automobile, attempting to get in a position to check its speed without calling attention of the driver to the fact that he was being pursued. When he reached a place about 20 feet or so south of Dickson Street, his motorcycle ran into a depression or rut (about four or five inches wide and two or three inches deep) running parallel with and along the inside of the east rail of the northbound track for a distance of several feet. Within a few feet thereafter, the motorcycle struck a galvanized sheet metal plate about a foot long by six inches wide, and a fraction (perhaps ⅛th) of an inch thick. An end or corner of that plate was wedged under the east rail and the plate protruded generally westwardly through the rut and out of it onto the surface of the street. Apparently the metal plate had been run over by heavy vehicles. In any event, it was flat against and conformed to the irregularities of the area it covered. There was no evidence that defendant was responsible for the presence of the metal plate. The motorcycle went out of control, traveled northeastwardly and struck Broadway's east curb. Plaintiff was thrown to the sidewalk at a place about 141 feet northeast of the metal plate.

Broadway's surface at the area in question (including the area from Franklin to Dickson), both to the east of the east rail and between the rails of the northbound track, was paved with cobblestones which had been covered in some areas with asphalt. The street's surface was rough and at places was somewhat rougher between the northbound rails than it was east of the track. Plaintiff had traveled the portion of Broadway in question many times and was familiar with the fact that the street's surface was rough and that care was required to traverse it safely on a motorcycle. He had increased his speed so that at the time of the accident he was going 35 or 36 miles per hour. He did not sound his siren or operate a red light. At the time the motorcycle entered the rut plaintiff was attempting to watch the automobile ahead of him and his speedometer, and at the same time pay some attention to his direction and the condition of the street. The evidence indicates the rut had existed for some time before the date of the contract between defendant and the city; and we consider it was shown that the condition of the rut at least was a concurring cause of plaintiff's motorcycle taking the course it did.

"A fundamental test of whether one person has a cause of action in tort against another is: Did the person, sought to be held liable, owe to the person, seeking to recover, any duty, to do something he did not do, or not to do something he did do? If so, his failure to do what he ought to have done or his doing what he ought not to have done constitutes a legal wrong, whether it be intentional or merely negligent, for which the person injured thereby can recover, except where his own fault is a contributing cause." Lowery v. Kansas City, 337 Mo. 47, 85 S.W.2d 104, 110. As stated in the dissenting opinion in Division: Actionable negligence is negligence to the particular person injured. The basis of an action for negligence must be a violation of plaintiff's own right. 38 Am.Jur. 660, Negligence, Sec. 18; 65 C.J.S. Negligence § 4, p. 332. The obligation must be due from

defendant to the person injured. Davidson v. St. Louis & San Francisco Ry. Co., Mo. Sup., 229 S.W. 786, 788; Karr v. Chicago, R. I. & P. Ry. Co., 341 Mo. 536, 108 S.W.2d 44, 49, and cases cited. It is not enough to show that the obligation was to another person or class, and that if performed as to them, plaintiff would not have been injured. "The wrongfulness of an act is found in its probable effect upon persons who are in some relation to the actor. As to unrelated parties, the happening is a pure accident. Facts which create a relation and therefore a duty as to one person do not establish the same obligation to all mankind. Accordingly, to be within the right created, the complaining party must show facts which make the reason for claiming a relationship applicable to him." 38 Am.Jur. 661. In some situations the duty to use due care is general and owing to everybody. "A duty, however, which is owing to everybody cannot serve as the basis of an action for negligence until some individual is placed in position which gives him occasion to insist upon its performance." 38 Am.Jur. 661, Negligence, Sec. 19. It then becomes a duty to him personally. 3 Cooley on Torts, 4th Edition, Sec. 478, page 366; Upp v. Darner, 150 Iowa 403, 130 N.W. 409, 410, 32 L.R.A.,N.S., 743.

■ Defendant public service company owed the general traveling public a duty to keep the street in repair as long as it enjoyed its license as a carrier to operate its Broadway streetcar line. During the time it owed that duty, however, plaintiff was not placed in a position which gave him occasion to insist upon its performance. It was not until the relationship between the carrier and the public came to an end and the duty no longer existed that plaintiff's injury occurred and his rights arose. When plaintiff was injured, defendant had no duty to anyone to repair the street along the streetcar tracks. It no longer owned or used the tracks and had no right, authority or duty to make any alteration, change or repair of the pavement of the street where they were. The city had taken over the tracks, become the owner of the rails, and it alone had the right, authority and duty to repair the street and keep it in good condition. See Wells v. City of Jefferson, 345 Mo. 239, 132 S.W.2d 1006; Burow v. St. Louis Public Service Co., 339 Mo. 1092, 100 S.W.2d 269; Cummings v. Halpin, Mo. App., 27 S.W.2d 718; Foster v. Kansas City, 114 Mo.App. 728, 90 S.W. 751. An action for negligence will not lie unless it appears that there existed, *at the time of the injury,* some legal duty or obligation on the part of defendant toward plaintiff, which defendant did not perform. (Emphasis ours.) 38 Am.Jur. 652, Negligence, Sec. 12; 83 C.J.S. Street Railroads § 302b, p. 446; 65 C.J.S. Negligence § 186a, p. 872; The Evansville and Terre Haute R. R. Co. v. Griffin, 100 Ind. 221, 222. At the time of plaintiff's injury, defendant not only owed no duty with respect to street repair to any member of the public but had no right whatever to make repairs. Therefore, plaintiff's only recourse was against the city under its duty to maintain the streets in a reasonably safe condition for the traveling public. Foster v. Kansas City, supra. We base our decision on complete lack of any duty and not on any theory of intervening cause.

■ Plaintiff relies on a breach of duty at the time when defendant did have the duty to repair; and cites A.L.I. Restatement of Torts, Sec. 433, Comment h at pages 1170–1171 as follows: "Experience has shown that where a great length of time has elapsed between the actor's negligence and harm to another, a great number of contributing factors may have operated, many of which may be difficult or impossible of actual proof. Where the time has been long, the effect of the actor's conduct may thus, become so attenuated as to be insignificant and unsubstantial as compared to the aggregate of the other factors which have contributed. However, where it is evident that the influence of the actor's negligence is still a substantial factor mere lapse of time, no matter how long is not sufficient to prevent it from being the legal

cause of the other's harm." However, this does not say it applies to a party's failure to act (nonfeasance), which caused no injury while such party had a duty to act, but where instead the injury resulted from the later failure of another to act (who then had the duty to act) after the duty to act of the party sought to be held had terminated. As to a force put in motion, the actual creation of a dangerous condition or the concealment of a dangerous condition the situation would be different. (See Secs. 352, 353, 354, 373, 374, 375, 376, Restatement of Torts.) The principles stated by these sections, as between vendor and vendee of land, are that the vendor is not liable to the vendee or others for any existing dangerous condition (after the vendee takes possession) unless the vendee does not know of it and the vendor does know of the condition and the risk involved and has reason to believe the vendee will not discover the condition and realize the risk. See also Combow v. Kansas City Ground Inv. Co., 358 Mo. 934, 218 S.W.2d 539, 541, 8 A.L.R. 2d 213, Annotation, 8 A.L.R.2d 218. Under these principles, a vendor, who has permitted land to be in dangerous disrepair, is liable to persons outside the land (after the vendee takes possession) only if the vendee does not know of the condition and the vendor does know of it and conceals it or fails to exercise reasonable care to disclose it to the vendee when he has reason to believe the vendee will not discover it. It is our view that the same principles are logically and reasonably applicable to the situation presented in this case. Here such condition as existed was not created by any affirmative action of defendant but was no more than a condition of disrepair (apparently the result of wear from use) and one that was open and obvious. Thus there was no reason to believe the city would not know as much about it as defendant especially since it had taken title to the tracks and had been paid a large sum by defendant for the very purpose of repairing this street.

These principles also provide the answer to plaintiff's claim that the city could not by contract relieve defendant from liability for failure to repair prior to the date of the contract, arguing that this would be an unconstitutional exercise of power, against public policy and in the nature of an ex post facto law. This contention fails to recognize the principles upon which defendant's liability must be based, namely duty to repair at the time of the injury, and that when duty to repair ends liability for future injury due to disrepair ends, unless there is concealment or some other circumstances such as those hereinabove discussed. There were no such circumstances in this case and we hold defendant was not liable for plaintiff's injuries.

The judgment is reversed.

EAGER, STORCKMAN, LEEDY and DALTON, JJ., concur.

WESTHUES, C. J., and HOLLINGSWORTH, J., dissent.