Athena THOMPSON, et al., Appellants,

v.

Harlan HIGGINBOTHAM and Gary Sherlock; Defendants

O'Riley Brothers Development Company and O'Riley Brothers Construction Company and Ralph and Nancy O'Riley, Respondents.

No. WD 65473.

Missouri Court of Appeals, Western District.

Jan. 10, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 28, 2006.

Application for Transfer Denied April 11, 2006.

James A. Montee, St. Joseph, MO, for Appellants.

Wendell E. Koerner, Jr., Kansas City, MO, for Respondents.

Harlan Higginbotham and Gary Sherlock, Defendants.

Before HAROLD L. LOWENSTEIN, P.J., JOSEPH M. ELLIS, and THOMAS H. NEWTON, JJ.

THOMAS H. NEWTON, Judge.

Athena Thompson, Devin Rankin, and Brenda Florea (Plaintiffs) appeal a judgment of the Nodaway County Circuit Court sustaining the Motion for Summary Judgment of O'Riley Brothers Development Co., O'Riley Brothers Construction Co., and Ralph and Nancy O'Riley (collectively, the O'Rileys). The Plaintiffs were allegedly injured when an outdoor balcony attached to a second-floor apartment that the O'Rileys had constructed some eleven years earlier collapsed while they were standing on it as invitees of the apartment's tenant. At issue is whether the circuit court erred in granting the motion on the basis of the ten-year statute of repose for builders that is set forth in section 516.097.[1]

To determine this issue, we are faced with a matter of first impression in Missouri, i.e., whether a builder/vendor, who has reason to know and fails to disclose that an improvement to real property involves an unreasonable risk to persons on the property, loses the protection afforded by section 516.097. Because we find that the Plaintiffs' pleadings were sufficient to show a connection of the O'Rileys with the unsafe or defective condition of the building other than as a designer and builder of the balcony, we reverse.

When we review an appeal from a summary judgment, the uncontradicted facts in the pleadings, discovery, or affida-

---

**1.** All statutory references are to RSMo. (2000) and the Cumulative Supplement (2004), unless otherwise indicated.

vits presented to the circuit court are taken as true, and we accord the non-movant the benefit of all reasonable inferences. *Butler v. Mitchell–Hugeback, Inc.*, 895 S.W.2d 15, 17 (Mo. banc 1995). Thus, the facts set out below are either uncontradicted or, where required, are inferences taken as favorable to the Plaintiffs.

A subcontractor to the O'Rileys completed construction of the balcony in question in 1992. The O'Rileys, who were the building's developers, builders, owners, and marketers,[2] conveyed the apartment by warranty deed to current owners Harlan Higginbotham and Gary Sherlock on June 1, 1993.[3] The collapse occurred on June 7, 2003, when some ten to fifteen individuals, including the Plaintiffs, were standing on the balcony. It was later determined that three deck screws, used by the builder to fasten the deck's outer edge to the 4x4 supports, had failed and were responsible for the collapse. While the deck screws could be seen with some effort from the underside of the balcony, it would have been difficult to determine whether they were adequate for the anticipated loads once construction was completed. There were no plans used to construct the balcony and no written specifications for the hardware to be used to secure the

deck's outer edge to the supports. The O'Rileys were experienced builders with a number of major construction projects, including other apartment complexes, to their credit. The current owners are a college professor and a dentist.[4]

The Plaintiffs, alleging injuries ranging from broken ankles to contusions, filed a petition for damages against the current owners in August 2003 and later amended the complaint to add the O'Rileys as defendants. The O'Rileys filed a Motion for Summary Judgment in December 2004, contending that there is no genuine issue of material fact and that the Plaintiffs' claims are barred by the ten-year statute of repose in section 516.097. The Plaintiffs argued in response that the statute of repose does not apply in cases where the defective condition is concealed and that the O'Rileys cannot benefit from the statute of repose because they were not "solely connected" to the apartments through design, planning, or construction. These are the same issues before this court on Plaintiffs' appeal from the circuit court's grant of the O'Rileys' Motion for Summary Judgment.

When we review a summary judgment, we look "not just to the petition[,] but to all the pleadings, depositions, an-

---

2. Specifically, the subcontractor who actually constructed the balcony at issue was Michael J. O'Riley Construction Co., who was hired either by O'Riley Brothers Development Co. or O'Riley Brothers Construction Co. The owner of the land on which the apartments were built was O'Riley Brothers Development Co., and the property was conveyed to Ralph and Nancy O'Riley on completion of construction. Ralph and Nancy O'Riley marketed and maintained the apartments, which were all occupied when conveyed to the current owners. Ralph and Nancy O'Riley were also the sole owners and officers of O'Riley Brothers Construction Co. and O'Riley Brothers Development Co. Ralph O'Riley instructed his brother, Michael, how to build the balcony that collapsed.

3. The circuit court's ruling on the O'Rileys' Motion for Summary Judgment only disposed of the claims against them. Three counts, which allege wrongdoing on the part of the current owners, remain in the case. The current owners filed a cross-claim against the O'Rileys. While the circuit court's ruling does not mention the cross-claim, by implication the ruling carries with it a finding on the cross-claim, and thus will be sustained as final. *Glick v. Glick*, 372 S.W.2d 912, 915 (Mo.1963).

4. Ralph O'Riley identified the current owners as such during his deposition.

swers to interrogatories and admissions on file, together with affidavits to determine if there is any material fact issue and that the moving party was entitled to judgment as a matter of law." *Magee v. Blue Ridge Prof. Bldg. Co.*, 821 S.W.2d 839, 842 (Mo. banc 1991). In this case, there is no dispute that construction of the balcony in question was completed in 1992 and that the incident giving rise to the claims occurred more than ten years thereafter in 2003.

Section 516.097 provides, in relevant part:

Tort action against architects, engineers or builders of defective improvement to real property must be brought within ten years of completion of improvement, exceptions.—1. Any action to recover damages for economic loss, personal injury, property damage or wrongful death arising out of a defective or unsafe condition of any improvement to real property, including any action for contribution or indemnity for damages sustained on account of the defect or unsafe condition, shall be commenced within ten years of the date on which such improvement is completed.

2. This section shall only apply to actions against any person whose sole connection with the improvement is performing or furnishing, in whole or in part, the design, planning or construction, including architectural, engineering or construction services, of the improvement.

. . . .

4. This section shall not apply:

. . . .

(2) If a person conceals any defect or deficiency in the design, planning or construction, including architectural, engineering or construction services, in an improvement for real property, if the defect or deficiency so con-

cealed directly results in the defective or unsafe condition for which the action is brought[.]

The Plaintiffs claim that the O'Rileys are not solely connected to the defective condition of the property as designers, planners, or builders as required by section 516.097.2, because they also owned the property when the apartments and balconies were built, and that, therefore, the ten-year statute of repose does not apply to their claims against the O'Rileys. They further contend that the O'Rileys also marketed the apartments and sold them to the current owners knowing they were defective, unreasonably dangerous, and unfit for their intended use. In this regard, the Plaintiffs' second amended petition states:

38. On June 1, 1993, Ralph O'Riley and Nancy O'Riley conveyed real estate including an apartment building therein located at 1447 North Country Club Road to Gary S. Sherlock and Harlan K. Higginbotham.

39. At the time of said real estate transaction defendants O'Riley Development, O'Riley Construction and Ralph and Nancy O'Riley knew or should have known that the building on 1447 North Country Club Road was purchased for use as a commercial apartment building.

40. At the time of said sale defendants O'Riley should have known that the building was not fit for such use in that the second floor balconies were not properly designed or constructed for their anticipated use.

41. As a direct and proximate result of said balcony being unfit for such use, the balcony collapsed on July 7, 2003 while occupied by plaintiffs.

42. Defendants O'Riley Development, O'Riley Construction and Ralph and Nancy O'Riley had superior knowledge that the second floor balcony was defective and unreasonably dangerous.

43. Defendants O'Riley Development, O'Riley Construction and Ralph and Nancy O'Riley were aware at the time they sold said apartment that hidden defects in the design, plans and construction of the apartment balcony made the unit unreasonably dangerous for its intended purpose.

44. At the time and place that the balcony deck failed and gave way, the deck was unstable, overstressed and unable to support anticipated weight loads and as a result the balcony deck was not reasonably safe.

45. As a direct and proximate result of Defendants' failure as described above, Plaintiff [Athena Thompson] was injured in her person, in that Plaintiff suffered fractures to both of her ankles, and other serious, painful and disabling injuries to Plaintiff's feet, legs and back, and the bones, muscles, cartilage, tendons, blood vessels thereof.

In summary, the Plaintiffs alleged that the O'Rileys were connected to the defective condition that caused injury in three ways: as the (i) designers, planners, and builders; (ii) property owners; and (iii) vendors with superior knowledge of a defective and unreasonably dangerous condition. This is the basis for the Plaintiffs' claim that the O'Rileys do not have a sole connection to the defective improvement to real property under section 516.097(2) and, thus, that their action is not barred by the ten-year statute of repose. *See Lay v. P & G Health Care, Inc.*, 37 S.W.3d 310, 321 (Mo.

App. W.D.2000) ("if a defendant has any connection that gives rise to liability with respect to an improvement other than by design, planning, or construction, § 516.097 is not available as an affirmative defense.")

■ This issue was previously considered, in part, and laid to rest by the Missouri Supreme Court in *Magee*, which involved a defendant who was the designer-contractor of a building with an allegedly defective stairway as well as a former officer and shareholder of the corporation that built and owned the building. 821 S.W.2d at 843. This defendant, stated the court, was "not shown to have any connection to the allegedly unsafe condition of the stairway that would give rise to his liability separate from his connection as designer and builder." *Id.* The court interpreted the statute's phrase "sole connection with the improvement" as "a connection to a defective or unsafe condition of an improvement on real estate *giving rise to liability.*" *Id.* (emphasis added). The court concluded that because the plaintiff had failed to plead that the defendant had a possessory interest giving rise to a duty toward the plaintiff when she was injured, she had failed to show any connection of the defendant with the unsafe or defective condition of the building other than as a designer and builder of the stairs. *Id.* at 843–44.

The court adopted this narrow view of the statute to give effect to the legislature's intent, stating that a contrary interpretation which excluded a designer, planner, or builder who is also a former tenant, shareholder, employee, or client of the owner from the protection, would defeat the statute's purpose "and lead to an absurd and unreasonable result." *Id.* at 844. See also *Blaske v. Smith & Entzeroth, Inc.*, 821 S.W.2d 822, 830 (Mo. banc 1991), in which the court states:

The common law seldom results in liability for former owners or operators who are not connected to the property at the time of the injury. This is an instance in which the common law reflects a rationale similar to that reflected in [section 516.097], *i.e.*, that after passage of a reasonable period of time, persons no longer associated with the property should not be held liable for injury or death caused by defective or unsafe conditions of the property.

Thus, to the extent that the Plaintiffs base their "sole connection" contention on the O'Rileys' status as former owners, we cannot sustain this point on appeal under *Magee*. This does not, however, end our inquiry.

■ The Plaintiffs alleged that the O'Rileys are liable for their injuries because they were builders and planners who also sold the property with superior knowledge of the defect. Hence, they have raised a duty different from that considered by the court in *Magee*. And while former owners generally owe no duty to those later injured by a defective or unsafe condition of the property, there is an exception to this rule enunciated in the Restatement (Second) of Torts. Section 353 provides, in relevant part:

5. In *Vanacek v. St. Louis Public Service Co.*, 358 S.W.2d 808, 812 (Mo. banc 1962), *cert. denied*, 371 U.S. 920, 83 S.Ct. 287, 9 L.Ed.2d 229 (1962), the Missouri Supreme Court discusses the first Restatement version of this section and acknowledges the viability of the principles set forth therein. *See* RESTATEMENT OF TORTS § 353 (1934). Nevertheless, the section was not applied to impose liability on a former property owner because the dangerous condition (i) was not created by an affirmative act of the defendant, and (ii) was open and obvious, thus the current owner was as likely to know about it as the defendant/former owner. *Vanacek*, 358 S.W.2d at 812. The 1934 version of section 353 provided:

(1) A vendor of land who conceals or fails to disclose to his vendee any condition, whether natural or artificial, which involves unreasonable risk to persons on the land, is subject to liability to the vendee and others upon the land with the consent of the vendee or his subvendee for physical harm caused by the condition after the vendee has taken possession, if

(a) the vendee does not know or have reason to know of the condition or the risk involved, and

(b) the vendor knows or has reason to know of the condition, and realizes or should realize the risk involved, and has reason to believe that the vendee will not discover the condition or realize the risk.

RESTATEMENT (SECOND) OF TORTS § 353(1) (1965).

The Missouri courts have not specifically adopted this section of the Restatement,[5] but it is recognized in many other states and reflects developments in the law with respect to an increased regard for human safety and the need to improve bargaining ethics. W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 64, at 447 (5th ed.1984). If we recognize such a duty on the part of vendors in the context of finding an exception to our statute of re-

A vendor of land, who conceals or fails to disclose to his vendee any condition whether natural or artificial involving unreasonable risk to persons upon the land, is subject to liability for bodily harm caused thereby to the vendee and others upon the land with the consent of the vendee or his sub-vendee, after the vendee has taken possession, if (a) the vendee does not know of the condition or the risk involved therein, and (b) the vendor knows of the condition and the risk involved therein and has reason to believe that the vendee will not discover the condition or realize the risk.

pose, we will foster greater openness and candor in real estate transactions. We will also, however, possibly open the door to potentially unlimited extensions of liability. Because we believe that each case must be decided on its facts, we do not believe that this potential negative consequence outweighs the potential benefits. The facts of this case plainly illustrate why this is so and also demonstrate the significant hurdles Plaintiffs will have to overcome to impose liability on the O'Rileys.

The O'Rileys are allegedly sophisticated, knowledgeable, and experienced builders. They may have had reason to know that the use of three deck screws to attach the balcony floor to its support would not hold the weight of more than a few people. They built these apartments a short distance from a college campus and also may have had reason to know that they would be rented to students who were likely to populate the balconies in fairly large numbers from time to time.[6] The apartments were sold to the current owners, a college professor and a dentist, who may not have been likely to discover the defective condition or realize the risk, without disclosure by the vendors of the potential risk.[7] It may have been reasonable for the current owners to believe that apartments with balconies, recently constructed and sold to them by experienced construction professionals, were in a safe condition.

What the vendors knew or should have known, what the vendees knew or had reason to know, and how obvious the allegedly defective/unsafe condition was are all material matters that involve factual disputes and cannot be determined as a matter of law by summary judgment. *Magee*, 821 S.W.2d at 842; *see also Jennings v. City of Kansas City*, 812 S.W.2d 724, 728–29 (Mo.App. W.D.1991) ("trial court must exercise great care in utilizing summary judgment," and "may direct a verdict only when 'no reasonable and honest persons could differ on a correct disposition of the case.'"). It is clear, as well, under section 353 of the Restatement that the passage of time is another factor that must be considered in imposing a duty on a former property owner.[8] But this is also a factual issue that cannot be decided by summary judgment.

This case is distinguishable from *Magee* because the Plaintiffs did allege in their petition, and the record contains sufficient facts to show, a connection of the O'Rileys to the unsafe or defective condition of the building giving rise to liability other than as a designer and builder of the balcony. 821 S.W.2d at 844. Accordingly, we find merit to the Plantiffs' claim of circuit court error in granting the O'Rileys' Motion for Summary Judgment. There are material facts in dispute as to whether the O'Rileys owed a duty to the Plaintiffs as vendors

---

6. In his deposition, Ralph O'Riley stated that, while his leases did not forbid large gatherings, he gave verbal warnings to apartment tenants about hosting such events and that none occurred during the months that he served as a landlord. He claimed that such proscriptions were to avoid disturbing other tenants.

7. Mr. O'Riley also testified during his deposition that he did not inform the current owners at the time of sale that there were any problems with the apartment buildings of which they should have been aware.

8. *See, e.g., O'Connor v. Altus*, 67 N.J. 106, 335 A.2d 545, 549 (1975) (nine years "much more than a reasonable time," for vendee to remediate even though design defect was latent and subtle); *Anderson v. Cosmopolitan Nat'l Bank of Chicago*, 301 N.E.2d 296, 298 (Ill.1973) (six days enough time for simple repairs of obvious hazard to preclude vendor liability); *Louisville & Jefferson County Metro. Sewer Dist. v. City of Louisville*, 451 S.W.2d 172, 173–75 (Ky.1970) (vendor could still be liable nineteen years after sale).

who had reason to know about a risky condition and failed to disclose it to their vendee and thus did not have a sole connection to the defective balcony as designers, planners, and builders. We reverse and remand for further proceedings.[9]

HAROLD L. LOWENSTEIN, P.J., and JOSEPH M. ELLIS, J. concur.

---

9. We find it unnecessary to address whether the alleged defective condition of the balcony was concealed. This point simply provides an alternative basis for finding that the statute of repose does not apply.