THE STATE v. BEN REVARD, Appellant.—106 S. W. (2d) 906.

Division Two, June 21, 1937.

*Roy McKittrick*, Attorney General, and *Aubrey R. Hammett, Jr.*, for respondent.

COOLEY, C.—Charged by information in the Circuit Court of Polk County with the offense of driving a motor vehicle while in an

intoxicated condition the defendant was found guilty as charged, sentenced to two years' imprisonment in the penitentiary and has appealed. He has filed no brief here. The State's evidence shows the following:

At the time of the alleged offense defendant was driving his two-seated automobile westward on the public highway in Polk County a short distance west of Bolivar, having in the car with him his wife and two others. The prosecuting witness, Edgar Knapp, accompanied by his wife, was driving eastward, toward Bolivar, in an automobile. The two cars collided at a curve in the highway, the left front part of defendant's car striking the left side of Knapp's car at about the door or left rear fender. Both cars were considerably damaged. Knapp's wife was slightly injured. No one else was hurt. Knapp's car was stopped by the impact and driven backward and to his right —southward—several feet. Defendant's car stopped against a railing at the north side—defendant's right side—of the graded roadway. Knapp testified that at and immediately before the time of the collision he was driving about twenty miles an hour and that defendant was driving fast and failed to make the curve properly. From Knapp's testimony and that of other State's witnesses who observed the tire marks on the highway it appears that Knapp was well to his right of the white center line of the highway when the collision occurred.

Immediately after the collision and at the scene thereof the occupants of both cars got out of their respective cars. Knapp testified that as defendant got out of his car he was "very much intoxicated". Immediately after the collision a number of people, some of whom had seen the collision or whose attention had been attracted by the crash, gathered at the place. In a very short time the sheriff and the prosecuting attorney arrived (the accident having occurred at the outskirts of Bolivar, the county seat). A dozen or so of these people testified that defendant appeared to be intoxicated and in their judgment was. Some of them described his actions, speech, etc. The sheriff, who had known defendant for a number of years and had transacted "quite a bit" of business with him, testified that on the occasion in question defendant "was drunk;" that he took defendant from the place of the collision to the prosecuting attorney's office, Mr. and Mrs. Knapp and defendant's wife and his other two passengers, Mr. and Mrs. Hopper, accompanying them, and that at said office defendant was still drunk. There was no evidence that defendant imbibed or could have imbibed any intoxicating liquor after the collision and before the sheriff took him to the prosecuting attorney's office.

Defendant did not testify. His wife and Mrs. Hopper testified that he appeared to be all right and did not appear to be intoxicated. Relatives of defendant and his wife, whom they had visited that day

at Springfield, testified similarly as to his condition when he left that place an hour or so before the collision. Other facts, if necessary, will be referred to in the course of the opinion.

Defendant in his motion for new trial charged that the court erred in overruling his motion to quash the information. ■ The motion to quash is not set out in the bill of exceptions, therefore is not before us. Neither does said bill show any exceptions to the overruling of said motion. But the information is part of the record proper and its sufficiency to charge an offense must be considered, though a motion to quash, in the nature of a demurrer to the information, be not incorporated in the bill of exceptions. [See State v. Settle, 329 Mo. 782, 46 S. W. (2d) 882.] Omitting formal parts and signature the information charges that defendant ''did then and there unlawfully and feloniously drive and operate a motor vehicle on the public highways of said county and State while in an intoxicated condition, against the peace and dignity of the State.'' It, in substance, follows the language of the statute creating the offense, Section 7783, Revised Statutes 1929 (Mo. Stat. Ann., p. 5234), and is substantially as approved in State v. Pike, 312 Mo. 27, 278 S. W. 725. [See, also, State v. Reifsteck, 317 Mo. 268, 295 S. W. 741.] We hold it sufficient.

■ It is further alleged in the motion for new trial that the court erred in permitting the prosecuting attorney to amend the information (apparently before trial) by interlining the word ''while,'' after the motion to quash had been filed and without reverifying the information as so amended. It does not appear that objection was offered to the alleged amendment being made by interlineation, without reverification, (if so made) instead of by filing an amended information. That such amendment, if so made by interlineation as suggested by defendant, was not contrary to law or prejudicial to defendant, see: State v. Darling, 216 Mo. 450, l. c. 464, 115 S. W. 1002; State v. Sillbaugh, 250 Mo. 308, 157 S. W. 352; State v. Gardner (Mo. App.), 231 S. W. 1057. But we refrain from discussion of this question because it is not properly here for review. The record certified to us does not show that such amendment was made. The only information certified to us as part of the record is the one on which the case was tried, which contains the word ''while.'' There is attached to the transcript what may be supposed to be a copy of the motion to quash, but it is not contained or preserved in the bill of exceptions. It is not, in this respect, in the nature of a demurrer to the information but seeks to present matters *de hors* the record of which there is no proof in the certified record. Not only do such allegations in a motion to quash fail to prove themselves but a motion of such character and exceptions to the overruling thereof, in order to be reviewable, should be preserved in the bill of exceptions, together with the proof tending to sustain such affirmative allegations. [See State v.

Hembree (Mo.), 37 S. W. (2d) 448; State v. Settle, supra.] A similar allegation is made in defendant's motion for new trial. But again the bill of exceptions contains no proof of the truth thereof and it is well settled that such allegations in a motion for new trial do not prove themselves.

■ Complaint is made that the court erred in permitting witnesses for the State to testify that at the scene of the collision and immediately after it had occurred defendant was or appeared to be intoxicated. No objection was made to any of this testimony except in one instance, viz.: While Knapp was on the witness stand he was asked to state what defendant's condition was as the latter got out of his car, and without objection, answered, "He was very much intoxicated." He then described defendant's actions and conduct. Following such description he was asked, "And in your opinion he was intoxicated there at the time when he got out of the car?" to which he answered, "Yes, sir." Not only do we think he was qualified to give the opinion expressed, having described the actions and conduct of defendant, but there was no objection until after the question had been answered (when objection was offered on the ground that the question called for a conclusion) and there was no motion to strike the answer. The objection came too late. Moreover, Knapp had previously testified without objection that defendant was intoxicated when he got out of his car. This contention is ruled against appellant.

■ It is contended that error was committed in permitting cross-examination of defendant's wife beyond the scope of her examination in chief. Mrs. Revard testified in chief in effect that so far as she knew and as defendant's actions and conduct indicated he was entirely sober at the time of the collision. Very soon after the collision and before there could have been time for him to sober up after the collision, if then intoxicated, or opportunity to become intoxicated if he was not so when the collision occurred, defendant was taken to the prosecuting attorney's office. That officer at once proceeded to question him. His wife was present. When she had testified at the trial, as above outlined, that her husband was sober at the time of the collision, she was asked on cross-examination if, while her husband was being questioned at the prosecuting attorney's office, she had not interjected the remark: "There is no use to try to talk to him (defendant) now, because you see he isn't in any condition to be talked to." (Evidence for the State indicated that defendant was then still in an intoxicated condition.) Mrs. Revard denied having made that statement, saying that she had only said "he was nervous." In rebuttal it was shown that she made the statement. The statute, Section 3692, Revised Statutes 1929 (Mo. Stat. Ann., p. 3242), does not limit the State in its cross-examination of the defendant or his or her spouse to a mere categorical review of the matter testified to

in chief, but such cross-examination may extend to any matter referred to or within the scope of the direct examination. [State v. Hawley (Mo.), 51 S. W. (2d) 77, citing State v. Glazebrook (Mo.), 242 S. W. 928, and cases therein cited.] The principle is well established. Sometimes there may be difficulty in applying it to the facts of a particular case. In the instant case we think it clearly applies. The statute further provides that such defendant or his or her spouse, testifying as a witness, "may be contradicted and impeached as any other witness in the case." Mrs. Revard testified on direct examination at the trial that defendant was not intoxicated at the time of the collision. Her said statement at the prosecuting attorney's office tended to contradict and impeach that testimony. The cross-examination was not improper.

The foregoing ruling in effect disposes also of a like complaint made as to the cross-examination of Viola Hopper, a witness for defendant, one of the persons in his car at the time of the collision. She was not within the provisions of the above-mentioned statute and was subject to cross-examination as any other witness. She, too, testified in substance that defendant was not intoxicated at the time of the collision. She was at the prosecuting attorney's office when defendant was there questioned. She was asked on cross-examination questions similar to that propounded to Mrs. Revard and further if she had there said that defendant would probably sober up and be in a condition to talk by midnight. She denied having made such statements. It was shown, in rebuttal, by way of impeachment, that she had made them. In all this we perceive no error.

In the motion for new trial it is assigned as error that the court failed to instruct the jury that the fact that defendant had not testified in his own behalf should not be considered by the jury. No such instruction was requested. If it had been requested it would not have been error to refuse it. [State v. Long, 324 Mo. 205, 22 S. W. (2d) 809, 813.]

Error is assigned in that the court failed to define in the instructions the terms "intoxicated" and "intoxicated condition" as used in the instructions and in the information; also in the court's refusal of defendant's requested Instruction A, reading as follows:

"The court instructs the jury that even though you may find and believe from the evidence that the defendant Ben Revard on the day in which he is charged with driving a car while intoxicated had drunk intoxicating liquor, yet that is not sufficient evidence for you to convict him on. Before you can convict the defendant, you must find and believe from the evidence and beyond a reasonable doubt that the defendant while he was driving the car was intoxicated, *that means that he was drunk.*" (Italics ours.)

The substance of said refused Instruction A was embodied in the instructions given except the portion we have italicized. In the given

instructions the court did not define "intoxicated" or "intoxicated condition." Was such omission and the refusal to give said Instruction A prejudicial error? We think not, because:

In State v. Reifsteck, 317 Mo. 268, 295 S. W. 741, we held that the words "intoxicated condition," as used in the statute, are of common, every day use, having a well defined and well understood meaning; that "everyone knows that the words refer to the impaired condition of thought and action and the loss of the normal control of one's faculties, caused by imbibing vinous, malt or spirituous liquors;" and that failure of the court to define them by instructions was not error. That ruling was reaffirmed in State v. Raines, 333 Mo. 538, 62 S. W. (2d) 727. In the latter case it is intimated, though not actually held, that a defendant in a case like this might be entitled, upon his request, to an instruction defining that term. But, even so, the definition must of course be a correct one, elucidating the meaning of the words as used in the statute. In this case the refused instruction contained nothing not contained in the given instructions except that "intoxicated" "means that he was drunk." What does the term "drunk" mean?

It may to different minds convey different conceptions as to the degree of intoxication. A friend of the writer, now deceased, once quoted this definition—we repeat from memory, perhaps not with exactness:

> "He is not drunk who from the floor
> Can rise again and drink some more.
> But drunk is he who prostrate lies,
> Unable more to drink or rise."

The statute, in the use of the words "intoxicated condition," certainly does not contemplate drunkenness to the extent indicated in the above quotation. If the term "drunk" as used in the refused instruction was intended to mean a degree of inebriation and loss of control of faculties greater than "intoxicated condition" as defined in State v. Reifsteck, supra, and State v. Raines, supra, defendant was not entitled to said instruction, because the statute prohibits the operation of motor vehicles by persons while in an "intoxicated condition." If it meant no more than "intoxication," as used in the statute, it did not explain or elucidate that term so as to make it any clearer than its commonly understood significance imports. That instruction, if given, would doubtless have served only to confuse the jury as to the meaning of the terms "intoxicated" and "intoxicated condition," as used in the statute and in the other instructions. It was properly refused.

It is alleged that the punishment assessed by the jury and inflicted by the court is excessive. The statute permits a maximum of five years' imprisonment in the penitentiary. The punishment

178

assessed was two years' imprisonment—well within the statutory limit. We perceive in the record no indication of passion or prejudice on the part of the jury or the court. This assignment is disallowed.

Lastly, complaint is made in the motion for new trial of alleged improper remarks by the prosecuting attorney in his argument to the jury. This argument was made in response to remarks that had been made by defendant's counsel in his argument. Whether or not the prosecuting attorney transcended the legitimate scope of reply to the argument of defendant's counsel we need not consider. No objection was made or exceptions saved to the prosecuting attorney's argument, and no ruling in regard thereto was asked of or made by the court. There is nothing, therefore, calling for review on that subject.

Appellant appears to have had a fair trial. The verdict is supported by substantial evidence. The information, verdict and judgment are in due form and sufficient. We find no prejudicial error in the record. The judgment of the circuit court is affirmed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by Cooley, C., is adopted as the opinion of the court. All the judges concur.