PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the Court.

All concur.

---

Milton B. Kirby, Springfield, for appellant in error.

John M. Dalton, Atty. Gen., Paul McGhee, Asst. Atty. Gen., for respondent.

## STATE v. SANCHEZ.

### No. 43821.

Supreme Court of Missouri.

Division No. 1.

June 14, 1954.

LOZIER, Commissioner.

Defendant-appellant (herein called defendant) was convicted of receiving stolen property knowing it had been stolen, Section 560.270 RSMo 1949, V.A.M.S., and sentenced to five years' imprisonment in the penitentiary. He appealed.

In this court, defendant's only allegation of error is the trial court's failure "to discharge the jury because of the inflammatory remarks made by the prosecuting attorney in his closing argument."

The state's case (defendant offered no evidence) was: Defendant and his wife Edna lived at a hotel in Springfield. Willie Birdsong, of Bolivar, had met them when he stayed at the hotel. Edna worked at the R. C. Cocktail Lounge as a "tattoo artist." Willie, a patron of the lounge, had visited with Edna there several times. Willie spent the afternoon of February 6, 1953, drinking beer in the lounge. Verla Louise Bridges (whom Willie had never seen before) came into the lounge and joined Willie. According to Willie, about 5:30 or 6 p. m., Verla persuaded Willie to go with her next door and have their picture taken; as they came out of the studio, Verla rushed him into a cab and took him to the Lone Star Cabins where she had him give her a ten dollar bill to pay for the taxi and the cabin; they went into the cabin; Verla gave Willie a "Mickey Finn"; Willie "passed out" almost immediately; when

Willie revived at dawn, both Verla and his money were gone. Verla's version was not materially different from Willie's. (According to her: Willie had wanted the picture taken, he proposed the trip to the cabin, she had not given him a "Mickey Finn," they drank three highballs made from whiskey Willie had bought before they left the lounge, and his loss of consciousness was simply a drunken stupor.) She admitted taking the money out of Willie's billfold, leaving the cabin and turning the money over to defendant.

We can perhaps best point up the sole issue in this appeal (the alleged impropriety of the prosecuting attorney's argument and the trial court's actions thereon) by summarizing the rest of Verla's testimony, given without objection. Verla was 28 years old, lived in Miami, Florida, and came to Springfield in January, 1953, to visit her husband, a prisoner in the Federal Medical Center there. She stayed at the hotel where defendant and his wife were living. Shortly after defendant became acquainted with her, he asked her "about some prostitution here, and I told him I wasn't interested," and that she was going back to Miami. She left for Miami and telephoned defendant from Birmingham, Alabama; defendant told her that if she would send him some money, he would join her, and she refused. She returned to Springfield and defendant asked her for money. Defendant and his wife told her about Willie, that he "had money on him," that as Willie didn't know Verla, she (Verla) could get it; and defendant "told me that I'd better get the money." At the lounge the next day (February 6, 1953), defendant and Edna pointed Willie out to her.

After Verla left the cabin, she met defendant at the lounge. He and she went to the hotel, she handed him her purse, he took out the money, counted it ("some $340 odd dollars") and kept it. Defendant then had Verla change clothes and he and she drove out of Springfield—defendant wanted to get her out of town. He took her to a cabin, they had several drinks, she "passed out" and defendant left her there.

After she "came to," she returned to town and saw defendant and Edna. They took her to the hotel where Verla asked defendant about $40 she had given him to keep for her "before I ever rolled this fellow by the name of Birdsong," but defendant "wouldn't give her the money." There was no talk "exactly of splitting the money (Willie's) up. I had just give Sam (defendant) the money. The proposition was that I was going to get the money and they (defendant and Edna) was going to pay off a car note, and we was going to Kansas City to involve in prostitution. Q. He was going to take you up there to be a prostitute, is that correct? A. That is right." She "had engaged in prostitution here in Springfield on two occasions at Sanchez's instance" and had given defendant the money.

Verla said that she had never been arrested for prostitution, but had "served time"—"once for assault, and attempt to murder, when I was eighteen years old, and three or four other times for vagrancy." She admitted that she then stood charged with larceny (of Willie's money, apparently) in Greene County, had served 18 months for violation of "the White Slave Traffic Act," 18 U.S.C.A. § 2421 et seq. and at one time had been a drug addict.

■ In his new trial motion, defendant first complained of this argument by the prosecuting attorney: "What other witnesses would the state have? What other witnesses would associate with some bloodsucker, some pimp who makes his money by sending out women to rob other citizens? Who else would know him? Who else would associate with him? Who else would be here to testify?" However, we need not rule the propriety of that argument as no objection thereto was made at the time. (The same applies to other argument of which defendant now complains but which he did not assign as error in his new trial motion.) State v. Revard, 341 Mo. 170, 106 S.W.2d 906, 911[17].

Referring to a statement in the argument of Mr. Kirby, defendant's counsel (that

defendant "values his liberty"), the prosecuting attorney said: "He (defendant) should have thought about that somewhere back in his career in which he enticed girls into this sort of life." Defendant's counsel objected saying, "There is no evidence of that—. The Court: The jury will disregard that statement. Mr. Kirby: And ask that the jury be discharged on the basis of that statement. The Court: The motion is overruled."

Later, the prosecuting attorney argued: "These people (such as defendant) are the lice of our society. We must take care of them. It is your duty as well as my duty to impose upon people of this type, the lowest form of humanity there is, the maximum punishment." Mr. Kirby objected "to those remarks as being inflammatory, and ask that the prosecutor be reprimanded, and ask that the jury be discharged. The Court: Well, those remarks are probably inflammatory. And the jury is instructed to disregard them, and pay no attention to them. Mr. Greene (the prosecuting attorney), refrain from using any further inflammatory remarks. And the motion to discharge the jury is overruled. Proceed." Mr. Greene then immediately concluded for the state thus: "I ask you, ladies and gentlemen of the jury, in all sincerity, to impose the maximum punishment that the State of Missouri provides in this case, and that is five years in the State Penitentiary. I am sure that you will discharge your duties in imposing a sentence in the same diligent and careful manner that you have reviewed the testimony in this case. I thank you."

■ Defendant and the state cite many cases wherein this court has reversed or refused to reverse a conviction because of prejudicial argument by the prosecuting attorney. We have examined all of those cases, but need not compare them with the instant case or even cite them. "Whether or not a particular improper argument is so prejudicial under the facts in the particular case, as to necessitate a reprimand of counsel or a discharge of the jury, is largely within the discretion of the trial court. An appellate court will not interfere unless the record shows that the trial court abused its discretion to the prejudice of the appellant." State v. Tiedt, 360 Mo. 594, 229 S.W.2d 582, 588[8–11].

■ We shall assume without deciding that the prosecuting attorney's statement as to defendant enticing girls "into this sort of life" was not justified by the evidence, and that his references to people of defendant's type as "lice" and "the lowest form of humanity," were improper. In both instances, defendant's objection was sustained, the jury was instructed to disregard the statement (and, in the latter instance, the prosecuting attorney was admonished to "refrain from using any further inflammatory remarks"), and the prosecuting attorney thereafter made no similar statement. In ruling defendant's new trial motion, the trial court considered the nature of the statements and determined that, under all the circumstances, they had not been so prejudicial to defendant as to justify the grant of a new trial. We believe that the trial court's action was sufficient in each instance and that the trial judge did not abuse his discretion in refusing to declare a mistrial.

We affirm the judgment and direct that defendant's sentence be executed. 42 V.A. M.S.Supreme Court Rule 28.14.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by LOZIER, C., is adopted as the opinion of the Court.

All concur.