**STATE of Missouri ex rel. Edvenia WILLIAMS, Relator,**

v.

**The Honorable Paul E. VARDEMAN, Judge of Division Three, Circuit Court, Jackson County, Missouri, at Kansas City, Respondent.**

No. 24663.

Kansas City Court of Appeals.

Missouri.

Dec. 4, 1967.

Phillip C. Ehli, Nolan J. Hepburn and R. C. Moore, Kansas City, for relator.

John A. Borron, Jr., Kansas City, for respondent.

CROSS, Judge.

This is an original proceeding to prohibit respondent, the Honorable Paul E. Vardeman, Judge of Division No. Three of the Circuit Court of Jackson County, from enforcing an order requiring relator Edvenia Williams to answer certain interrogatories propounded by a defendant she had sued for personal injury damages. Pursuant to relator's petition, a preliminary rule in prohibition was issued by this court, to which respondent duly filed his return. Thereafter briefs were filed by the parties and the case was orally argued and submitted.

Relator's personal injury suit is entitled "Edvenia Williams, Plaintiff, vs. David Kramer, Defendant." As plaintiff in that action, relator Edvenia Williams alleged in her petition that while she was engaged in the performance of domestic duties at the home of defendant, as his employee, she was caused to slip and fall upon the basement floor by reason of defendant's negligence in permitting the floor to become "slick and slippery". As a result of her fall, relator alleged that she was caused to suffer "severe, progressive and permanent in-

juries" in that she received a fracture of her right wrist, which has greatly limited and impaired its functions and use; that she was caused to suffer "great physical pain, nervousness and restlessness and has been unable to enjoy her natural rest and sleep and her general health has been greatly affected and impaired"; that her ability to work and labor has been lessened and impaired and that she has been caused to lose both past and future earnings; that she has incurred and in the future will incur obligations for expenses incident to medical treatment for her injuries. Relator's prayer for damages is in the sum of $10,000.00.

Defendant propounded interrogatories to relator, fifteen in number. Only four of them are specific subjects of our discussion. They are quoted as follows:

\* \* \* \* \* \*

"3. Have you or has anyone in your behalf, at the time of, or since the time of the occurrence described in plaintiff's Petition for Damages, learned, received, obtained or procured from any source whatever, the names of any witnesses to said occurrence, or the names of any witnesses having any knowledge of relevant facts concerning said occurrence."

\* \* \* \* \* \*

"5. (a) Please state the names and addresses of all doctors, physicians, surgeons, healers, or other practitioners of the medical arts, who have examined and/or treated you for the injuries alleged by you in your Petition for Damages.

(b) Please state the *number* of calls or visits by or to said practitioners and give the *date* of each visit or call.

(c) Please state the *type* and *number* of examinations or treatments you have taken from said practitioners and the *date* of each such examination and/or treatment."

\* \* \* \* \* \*

"11. Except for the claim alleged in your petition for damages in this case,

have you ever made a claim or filed any suit for damages of any kind or character, or made any Workmen's Compensation claim at any time?"

\* \* \* \* \* \*

"12. If the answer to any of the preceding interrogatory is in the affirmative, for each such claim or suit filed or made by you, please state the following:

(a) Date the claim was made and/or suit filed.

(b) Court, agency or organization with whom claim or suit was filed.

(c) The name and address of the defendant against whom each suit was filed or claim made.

(d) The description of the occurrence giving rise to such claim or suit and the date thereof.

(e) Injuries and damages you claimed in such claim or suit, the amount you received, if any, and the name and last known address of the person paying same.

(f) Name and address of attorney, representing you for such claim and/or suit.

(g) Names and addresses of doctors, physicians, or other practitioners of the medical arts and hospitals you may have been confined in, together with the dates of treatment or confinement."

\* \* \* \* \* \*

Relator filed general objections to all fifteen interrogatories on the ground that "said interrogatories are submitted by the use of a printed form, and is not drawn up in proper language or designed to fit the particular circumstances of the case, so that every time these interrogatories are filed, *objectionable questions are included therein*, and this requires the opposing party to make objections thereto, and the Court to rule on these objections which constitutes a hardship and is burdensome and oppres-

sive." Specific objections were directed against Interrogatory No. 3 on the ground that it called for a conclusion of law in that it required plaintiff "to determine what is meant by the term 'knowledge of relevant facts'"; against No. 5(c) on the ground that it required plaintiff to give "expert" medical opinions, and to reveal privileged doctor-patient information when there was no waiver of the privilege; and, against No. 11 on the ground that the question is "vague and all inclusive, and seeks evidence that is irrelevant and immaterial", in that it inquires concerning claims that have no bearing on her lawsuit. Thereafter, by leave of court, defendant amended Interrogatory No. 3 by striking the language "or the names of any witnesses having any knowledge of relevant facts concerning said occurrence." Respondent judge thereupon overruled relator's objections, inclusive of the objection to Interrogatory No. 3 as amended. During pendency of a motion filed by defendant to compel answers to the interrogatories, relator instituted this action in prohibition.

The underlying issues framed by the pleadings in this proceeding are essentially the same as were presented to the trial court by relator's objections to defendant's interrogatories, above noted. Relator's petition alleges in substance that respondent judge abused his discretion by overruling her general objections to the entire set of interrogatories on the ground they were "lengthy, burdensome, improper and oppressive interrogatories—propounded to her by the use of a printed form,—thereby compelling plaintiff to file objections thereto in order to avoid a waiver of her rights", and by overruling her specific objections to interrogatories numbered 3, 5(c) and 11. Respondent's return generally traverses these allegations. It is noteworthy that the allegations of relator's petition charging respondent with abuse of discretion in overruling her specific objections are limited solely to Interrogatories Nos. 3, 5(c) and 11, as in fact her specific objections in the trial court were so limited. Notwithstanding, re-

lator now attempts to expand our inquiry by setting out in her brief and orally arguing new grounds of specific complaint against several interrogatories other than Nos. 3, 5(c) and 11, not heretofore presented to the trial court in the form of objections. Consequently these new questions are not properly before this Court for consideration or decision. To accept them now for those purposes would serve to nullify the provisions of Civil Rule 56.01 which limits to ten days the time within which a party may interpose objections to propounded interrogatories. Furthermore, it is our opinion that "an objection which is so general that it would require the court to particularly examine each question propounded to determine if the objection applies, is not good.", as held in Stover v. Central Broadcasting Co., 247 Iowa 1325, 78 N.W.2d 1, on authority of numerous federal decisions therein cited. Also see Barron and Holtzoff, Federal Practice and Procedure, Section 775, "Objections to Interrogatories; Protective Orders" and cases there cited. In determining whether the trial court exceeded his judicial authority we will limit our consideration to the issues that were laid before him for decision.

The merits of relator's complaints in this proceeding depend primarily upon whether the interrogatories in question come within the scope of permissible inquiry authorized by applicable rules of discovery here noted. In pertinent part Civil Rule 56.01(a) V.A.M.R. provides that "interrogatories may relate to any matters which can be inquired into under Rule 57, and the answers may be used to the same extent as provided in Rule 57 for the use of the deposition of a party." In defining the scope of depositional examination, Civil Rule 57.01(b) provides that "the deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, * * *. It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the dis-

covery of admissible evidence." As succinctly stated in State ex rel. Houser v. Goodman, Mo.App., 406 S.W.2d 121, "Discovery should provide a party with access to anything relevant to the proceedings and subject-matter of the case not protected by privilege."

■■ In ruling the issues we will also be mindful of the underlying principle that primarily the responsibility of administering discovery procedures is necessarily cast upon the trial court. As further stated in State ex rel. Houser v. Goodman, Mo.App., supra, " 'Whether questions are proper in form and substance is,' in the first instance, 'for the determination of the trial court; and the court should keep in mind that if an objection is sustained the interrogator has the right to reframe and resubmit the question in proper form or to propound additional ones. "The number of interrogatories or of sets of interrogatories to be served is not limited except as justice requires to protect the party from annoyance, undue expense, embarrassment, or oppression. * * *" Civil Rule 56.01(a), V.A.M.R.' State ex rel. Hof v. Cloyd, supra, Mo. (En Banc), 394 S.W.2d 408, 411–412."

■ In arguing that her general objections should have been sustained, relator clarifies her position to some extent by agreeing with respondent that "There is nothing contained therein (in Rule 56) which prohibits or condemns the use of printed interrogatory forms * * *", and by stating that her general objections to the entire set of questions are not based alone on the fact they are on a printed form. These coincident views of the parties are also shared by this court. The interrogatories are not subject to our disapproval because they are presented in printed form (mimeograph). We find no rule or decision that condemns such practice.[1] This is not to say that abuse and oppressive burden can not result from the use of printed interrogatory forms. That contingency must be tested by the applicability of the questions to the facts of each particular case.[2]

Relator's argument in support of her general objections amounts, in substance, to a charge that the use of printed form interrogatories has given rise to an abuse of discovery process generally practiced by "defense counsel" in the jurisdiction of Jackson County, where her damage suit is pending. She explains that she objects *generally* to the interrogatories because, *as printed forms*, they are "so broad, so general and so all inclusive", and may be served in any case with such ease, that defense counsel have developed the "custom and practice" of repeatedly filing their form interroga-

---

1. The Civil Practice and Procedure Committee Reports of the Missouri Bar, 22 Mo.B.J. 510 (December, 1966) states: "8. Remedies for abuses in the use of interrogatories. A subcommittee has been considering several proposals for remedies in the use of interrogatories, i. e.: to limit the number of interrogatories which may be submitted, to prohibit mimeographed interrogatories, and to formulate 'form' interrogatories. The Civil Practice Committee considered a report of the subcommittee that the number of interrogatories permitted not exceed 20 and that mimeographed interrogatories be prohibited; these proposals were rejected. The subcommittee is studying further the possible use of 'form' interrogatories."

2. The following comment contained in the official report of a seminar discussion by the appellate and circuit judges held during the 1967 session of the Missouri Judicial Conference on the subject of "Use and Abuse of Interrogatories" represents the consensus of the conference on the question of printed interrogatory forms: "The mechanics of reproducing legal forms should not be determinative of their propriety. Mimeographed interrogatories which are appropriate in number and scope are not 'per se' objectionable. However, if the mimeographed interrogatories are lengthy and some are inappropriate, neither the court, nor the opposing attorney should be required to laboriously sift the wheat from the chaff. It was the consensus that the whole set should be aborted."

tories in all personal injury lawsuits, thereby unnecessarily burdening plaintiffs with the necessity of filing objections or suffering waiver of their right to do so. Thus, says relator, frequently "the Defendants obtain an advantage by default or abdication by the plaintiffs' responsibility because of time involved or for financial reasons." Still outside the record, relator informs us that there is an excessive use of interrogatories in Jackson County; that defense counsel in that jurisdiction generally have delegated their professional responsibilities to their secretaries by giving them a standing order to attach a copy of the form interrogatories to the answer when it is filed; that defense counsel in general are retained on an hourly basis by insurance companies with unlimited resources (the implication being that defense counsel can well afford the time devoted to resolving questions relating to the propriety of interrogatories, which counsel for "the indigent, crippled Plaintiff" could ill afford). Additionally, relator directs our attention to "Appendix A" of her brief, same being a summary of the 1965 "Smith Jury Verdict Service" for the area of Kansas City, showing that defendants won almost 40% of lawsuits involving rear-end accidents, suggesting that one of the main reasons for this result is the improper use of form interrogatories. There is no evidence whatsoever in the record to support these statements. Consequently they have no bearing on whether the trial court should have sustained her general objections.

For that matter, even if it were disclosed by the record that the general practice of which relator complains in fact existed, we would not be justified in condemning the interrogatories as a whole for that reason or on that basis. The validity of interrogatories is not dependent upon the method of their preparation, the mechanics of their reproduction, or the extent of their use "in other cases". Those factors are not prescribed by any Missouri statute, civil rule, or court decision as criteria to be considered in ruling the propriety of questions propounded. The determining consideration is whether the inquiry is relevant to the subject matter involved *in the pending action* and appears "reasonably calculated to lead to the discovery of admissible evidence." [1] By overruling relator's general objections, the respondent judge has in effect ruled that the subject interrogatories were not as a whole, or in any substantial part, outside the proper scope of legitimate discovery as it is so defined. Relator has not satisfied her burden to establish that such ruling was in excess of his judicial discretion.

Next we consider whether respondent judge was without jurisdiction to require that relator answer Interrogatory No. 3 in its amended form. As shown above, the interrogatory in original form not only requested "the names of any witnesses to said occurrence" but also inquired the names of any witnesses "having any knowledge of relevant facts concerning said occurrence." Upon relator's objections to

1. In Goldman v. Ashkins, 266 Mass. 374, 165 N.E. 513, 515, the Supreme Court of Massachusetts ruled the precise question as follows: "The validity of interrogatories is not dependent upon the questions whether they were 'prepared with particular reference' to or necessitated 'thought or labor' touching the cases at bar. The method of preparation is of no consequence. The only relevant point is whether they are reasonably adapted to seek 'discovery of facts or documents admissible in evidence at the trial of the case.' Doubtless many questions might rightly be the same with respect to automobile accidents regardless of the special facts of a given case.

"When interrogatories are filed it is wholly immaterial whether they are 'stock forms', whether they are 'mimeographed' or 'written, dictated or typewritten,' or 'prepared in large quantities,' so long as they are proper in substance and comply with Section 7 of the 'General Rules to the Records of the Supreme Judicial and Superior Courts.' Rules of Supreme Judicial Court (1926), p. 61. The only thing to be considered is whether the interrogatories are pertinent to the issues in the case."

the interrogatory the defendant confessed error in the latter quoted portion by amending the interrogatory, with leave of the court, to read, "Have you or has anyone in your behalf, at the time of, or since the time of the occurrence described in plaintiff's Petition for Damages, learned, received, obtained or procured from any source whatever, the names of any witnesses to said occurrence." Manifestly the interrogatory was improper in its original form, because it called for a conclusion and determination by the party as to what is relevant knowledge of relevant facts, State ex rel. Hof v. Cloyd, Mo.Sup., 394 S.W.2d 408, but was in proper form after it was amended. State ex rel. Hudson v. Ginn, Mo.Sup., 374 S.W.2d 34. The respondent judge did not exceed his jurisdiction or abuse his discretion by allowing the amendment and thereafter ordering relator to answer the question as amended. Civil Rule 56.01(a) provides that "the number of interrogatories or of sets of interrogatories to be served is not limited." And, as said in State ex rel. Hof v. Cloyd, supra, "the (trial) court should keep in mind that if an objection is sustained the interrogator has the right to reframe and resubmit the question in proper form or to propound additional ones. * * *". Certainly, if a party is thus privileged to reframe and resubmit an improper question after objection to it has been sustained, it must follow that a trial court has authority to allow the voluntary amendment of an improper question to obtain the same result, without prejudice to the interrogator's right to receive an answer. Relator has suffered no oppression or injustice by respondent's requirement that she answer Interrogatory No. 3 in its corrected form.

Relator next complains that she should not have been required to answer Interrogatory 5(c), the text of which is here repeated: "Please state the *type* and *number* of examinations or treatments (referring to injuries alleged in relator's petition for damages) you have taken from said practitioners and the *date* of each such ex-

amination and/or treatment." Her specific complaints against the interrogatory are that in requesting her to state the type of treatment she has received from physicians it calls for information that is privileged under Section 491.060; also that it requires a medical opinion and calls for a "legal-medical" conclusion. There is no merit in these submissions.

Section 491.060 V.A.M.S., in pertinent part, reads as follows: "The following persons shall be incompetent to testify: * * * (5) A physician or surgeon, concerning any information which he may have acquired from any patient while attending him in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or do any act for him as a surgeon." A "privilege" is thereby conferred upon the patient to suppress, as evidence, information acquired by a physician from a patient while attending him in a professional capacity, which the latter may waive. Davenport v. City of Hannibal, 108 Mo. 471, 18 S.W. 1122. Application of the statute has frequently perplexed our courts. As said by the Supreme Court in Green v. Terminal Railroad Ass'n, 211 Mo. 18, 109 S.W. 715, "It is obvious the language of the statute is of such sort that its interpretation and application are troublesome. * * * On the one hand, it might be so construed as to fritter away the provisions of the law. On the other hand, it might be so literally construed as to work great mischief in the administration of justice. * * * The application of such law must be with discrimination, so that it may have the legislative effect intended for it, and yet the investigation of truth be not unnecessarily thwarted."

Granting that physicians and medical practitioners who have examined or treated relator may not be questioned in respect to those matters, unless or until the privilege extended by Section 491.060 has in some manner been waived, there is nothing contained in that statute that renders

relator incompetent as a witness generally, that relieves her from complusion to testify as a witness subject to cross-examination by the adverse party as provided by Section 491.030 V.A.M.S., or that exempts her from the legal duty to answer interrogatories imposed upon her by Civil Rule 56.01(a). In her petition relator alleges that she suffered "severe, progressive and permanent injuries" which compelled her "to seek medical treatment and incur expense therefor." She may not now draw the curtain of silence and refuse further communication on the very issues she has originated and would submit to judicial inquiry. The defendant from who she seeks damages is entitled to search her knowledge and her conscience on those questions. The interrogatory by which he undertakes to do so does not require her to consult her physicians in order to answer it or to disclose by indirect communication any information they may have acquired from her. Assuming that relator is a person of ordinary intelligence, it is not unreasonable to believe that by her own observation she may have acquired some knowledge and understanding of the general nature of the medical treatment she claims to have received. She should be able to recognize and identify at least some of the standard medical treatment procedures that are matters of common knowledge to laymen—for instance: the administration of medicine by mouth or hypodermic injection; light or heat treatment; hydrotherapy; massage; X-ray therapy. Whatever relator may have learned in that manner about the treatments she may have received, it is now her duty, as a plaintiff-claimant, to disclose all information within her personally acquired knowledge that reasonably bears upon a determination of the nature and resulting effect of her alleged injuries, including any information as to the *type*, number and dates of treatments therefor. Interrogatory No. 5(c) is a legitimate inquiry and does not require a medical opinion or legal-medical opinion for its answer. Cases cited and relied upon by relator are not in point because they involve the ques-

tion as to the competency of physicians to testify as witnesses—not their patients.

We additionally note that by answering Interrogatory No. 5(c) relator will suffer no waiver of the privilege extended by Section 491.060. It is well settled that in order to waive the confidential privilege in question, "the party's admission must be voluntary, which is not the case when it is extorted under cross-examination." Hemminghaus v. Ferguson, 358 Mo. 476, 215 S.W.2d 481.

Relator next directs complaints against Interrogatory No. 11, which, for convenience, we re-quote: "Except for the claim alleged in your petition for damages in this case, have you ever made a claim or filed any suit for damages of any kind or character, or made any workmen's compensation claim at any time?" Relator argues that the interrogatory is "too broad" and "all inclusive" in that it inquires whether she has made a claim or filed a suit for damages of *any kind or character*. She finds no fault with the interrogatory insofar as it pertains to claims and suits to recover on account of personal injuries. For that matter, it would have been an abuse of respondent's discretion had he denied discovery so limited. State ex rel. Hudson v. Ginn, Mo.Sup., 374 S.W.2d 34. Relator insists that the question as framed improperly requires her to divulge claims or suits for damages, other than for personal injuries which conceivably might extend to various categories of loss and damage having no relevance to the subject-matter of interrogation. We agree with relator that the scope of the question is too broad and that it should be restricted to claims and suits for personal injuries. In its present form and taken in its clearly expressed literal sense, the interrogatory requires relator to divulge all her prior claims or suits for damages of whatsoever nature, whether arising from breach of contract, the exercise of eminent domain, loss of or damage to property, trespass, libel, slander, assault, ravishment, invasion of privacy, fraud,

abuse of process, or the various other causes for which damages are recoverable other than physical injury. In our opinion information relative to such claims and suits has no bearing on the issues to be tried in relator's present suit and is not reasonably calculated to lead to the discovery of evidence admissible therein. The requirement imposed upon relator that she furnish such information would subject her to unnecessary burden, and could conceivably constitute an unwarranted invasion of her privacy.

Accordingly the effect of our judgment will be to relieve relator from the requirement that she answer Interrogatory No. 11. And, inasmuch as answers to Interrogatory No. 12 are called for only in the event Interrogatory No. 11 be answered in the affirmative, (which, under our present ruling will not be done), Interrogatory No. 12 has consequently become irrelevant. Anticipating that in due course of further proceedings in relator's damage suit a new interrogatory may be propounded inquiring whether relator has made other claims or filed other lawsuits for damages resulting from *personal injuries*, accompanied by ancillary interrogation in the general nature of present Interrogatory No. 12, we deem it appropriate to recommend that counsel and the trial court give due consideration to (1) whether defendant is entitled to information concerning all prior claims or suits for personal injury damages *without limitation as to time*, or should be limited in such inquiry to some reasonable period of years prior to relator's present lawsuit, and (2) whether the defendant is entitled to inquire the names and addresses of attorneys who may have represented her in any such claims or suits.

■ Our Supreme Court has recently drawn attention to "an inordinate and apparently unnecessary number of applications to regulate the use of interrogatories." State ex rel. Hof v. Cloyd, Mo.Sup., 394 S.W.2d 408. Reminding counsel of their responsibility to formulate proper interrogatories and the trial court of its broad discretion to control their use, the same authority states: "Attorneys experienced in the taking of depositions or the oral examination of witnesses at a trial should have no difficulty in formulating or recognizing proper written interrogatories. Such interrogatories should call for specific relevant facts and not be repetitious. They should not call for opinions or the conclusions of the person interrogated or require him to resort to speculation or conjecture as to what is intended. Whether questions are proper in from and substance is for the determination of the trial court; and the court should keep in mind that if an objection is sustained the interrogator has the right to reframe and resubmit the question in proper form or to propound additional ones." Being vested with the authority so provided, the trial court is not compelled to laboriously sift through a bulk of interrogatories containing improper questions in order to find those which are germane to the case. If, upon examination, a set of interrogatories appears to contain a substantial number of inappropriate questions, or is otherwise subject to meritorious objection, it is within the trial court's discretion to strike the entire set from the files, subject to the interrogating party's right to reframe and resubmit the questions. As previously noted. "The number of interrogatories or of sets of interrogatories to be served is not limited except as justice requires to protect the party from annoyance, undue expense, embarrassment or oppression. * * *". Civil Rule 56.01(a).

In accordance with our views hereinabove expressed our preliminary rule in prohibition is made permanent as to Interrogatories Nos. 11 and 12, and in all other respects is quashed.

HOWARD, P. J., concurs.

MORGAN, J., not participating because not a member of the Court when the cause was submitted.