STATE of Missouri,
Plaintiff–Respondent,

v.

Terry EVANS, Defendant–Appellant.

Terry Lamont EVANS, Appellant,

v.

STATE of Missouri, Respondent.

No. 72549.

Supreme Court of Missouri,
En Banc.

Jan. 9, 1991.
Rehearing Denied Feb. 7, 1991.

**510**

Cheryl Rafert, Henry Robertson, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Robert V. Franson, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

RENDLEN, Judge.

Consolidated appeals from defendant's conviction for rape and the overruling of his Rule 29.15 motion.

Reviewing the evidence in a light most favorable to the verdict, the record discloses that defendant, in January, 1987, spent several nights at the home of his aunt and her six children. On one of those nights, he went upstairs to the bedroom of his nine-year old cousin, M.E., where he raped the little girl and afterward instructed her to take a shower and threatened physical harm if she spoke to anyone of the incident.

A few days later M.E. noticed a brown discharge in her panties and when this was brought to her mother's attention on January 27, M.E. was taken to the emergency ward of a local hospital where she tested positive for vaginal and rectal gonorrhea. At first she refused to discuss what happened, but finally told her mother and hospital officials of the crime. Thereafter someone, apparently the hospital officials, contacted the work house where defendant was incarcerated (on an unrelated matter) advising of the likelihood that he was infected with gonorrhea. Though the medical staff of the work house informed defendant they would treat him for this disease,

the record does not show that any testing or treatment occurred.

On January 29 and February 13, defendant's girlfriend (Curry) went to the Sexually Transmitted Disease Control Clinic in St. Louis where she was diagnosed and treated for gonorrhea. While supplying background information, she told health officials that her only sexual partner during this time was defendant.

From this and the other evidence adduced at trial, defendant was found guilty of raping M.E. with punishment assessed at fifteen years' imprisonment and his timely pro se Rule 29.15 motion seeking post-conviction relief was denied.

## DIRECT APPEAL

### (A)

Defendant first asserts the trial court erred allowing in evidence Curry's medical records revealing gonorrhea infection because she had not consented to their release. During direct examination Curry denied receiving treatment for gonorrhea but on cross-examination, the medical records were introduced indicating she had been so diagnosed and treated for that disease shortly after defendant's attack upon M.E. When confronted with those records she admitted they were correct.

■ Defendant insists Curry's records were inadmissible, relying on § 491.060(5), RSMo 1986 [1], which provides:

The following persons shall be incompetent to testify:

.     .     .     .     .

(5) A physician or surgeon, concerning any information which he may have acquired from any patient while attending him in a professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or do any act for him as a surgeon.

While it is correct the privilege extends to criminal as well as civil proceedings,

**1.** Defendant's trial occurred prior to the 1988 revisions of § 491.060 and the 1986 statute is applicable here.

*State v. Beatty*, 770 S.W.2d 387, 391 (Mo. App.1989), and to hospital records of the sort presented here, *State ex rel. Benoit v. Randall*, 431 S.W.2d 107, 109 (Mo.1968), defendant's reliance upon the physician-patient privilege is nevertheless misplaced.

▇ Though the facts present a novel situation, it appears defendant is without standing to object to the introduction of these records. The physician-patient privilege is personal to the patient, *Wells v. City of Jefferson*, 345 Mo. 239, 132 S.W.2d 1006, 1010 (1939); *Foerstel v. St. Louis Public Service Co.*, 241 S.W.2d 792 (Mo. App.1951), and generally no person (including the physician) other than the patient may so object. 97 C.J.S. *Witnesses* § 303 (1957). Here it was the patient's, not defendant's, right to assert the privilege. *In re M___ P___ S___*, 342 S.W.2d 277, 283 (Mo.App.1961); *State ex rel. Williams v. Vardeman*, 422 S.W.2d 400, 407 (Mo.App. 1967). Similarly, a defendant in a criminal prosecution cannot claim physician-patient privilege to bar testimony from the victim's treating physician. 81 Am.Jur.2d *Witnesses* § 262 (1976).

*In re M___ P___ S___, supra,* involved a mother, accused of child abuse, who attempted to raise the physician-patient privilege on behalf of her son, the victim of her neglect. At trial, the mother successfully objected to the child's treating physician's testimony. The appellate court, reversing, noted that in normal circumstances a parent would have the right to claim the privilege on behalf of her child, but that right exists only when it is in the child's best interests. *Id.* at 283. It was to the mother's benefit to prevent the physician's testimony, but contrary to the interests of the child and where the interests so conflict, the parent may neither raise nor waive the privilege. *Id.* In the case at bar, the medical records related only to Curry and she, not defendant, had the right to invoke the privilege and the record demonstrates she made no such objection.

▇ This action is distinguishable from the line of cases holding that even in the absence of waiver by the patient, the physician may in certain limited circumstances assert the privilege on behalf of the patient. *St. Louis Little Rock Hospital, Inc. v. Gaertner*, 682 S.W.2d 146, 151 (Mo.App. 1984); *see also State ex rel. Lester E. Cox Medical Center v. Keet*, 678 S.W.2d 813, 815 (Mo. banc 1984). In those cases, the physicians had been sued by former patients alleging malpractice, who during discovery requested that the physicians furnish records regarding other patients. In *State ex rel. Lester E. Cox Medical Center, supra*, this Court held that in the interest of justice the privilege could be slightly modified to allow *in camera* review of such documents to protect the identity of the other patients. *Id.* at 815. In *St. Louis Little Rock Hospital, Inc.*, the court of appeals held that records regarding attempted suicides at a particular hospital for the previous five years were privileged, interpreting narrowly the *in camera* review exception. *Id.* at 152. The facts here are clearly distinguishable from the unique setting in which a physician-party is requested to furnish records of other patients and the physician, asserting the privilege, makes objection on behalf of the non-party patients. In the case at bar defendant was not involved in the confidential relationship between the patient and her treating physician. Further, when the patient was testifying under oath it was she who had standing to assert or waive the privilege. For the reasons now discussed, the question was set to rest by Curry's waiver of the privilege in the following exchange occurring during direct examination:

Q: [Defendant's attorney] To the best of your knowledge from what you know, have you ever had gonorrhea from, like, January on?

A: [Curry] No.

Q: Have you ever shown any of the symptoms of gonorrhea?

A: No.

Q: You had a discharge?

A: Yeah, probably from being pregnant, that's about it.

Q: So you never received any type of treatment for gonorrhea?

A: No.

The privilege can be waived by the patient, *State ex rel. McNutt v. Keet,* 432 S.W.2d 597, 600 (Mo.1968), in numerous ways. *Klinge v. Lutheran Medical Center of St. Louis,* 518 S.W.2d 157, 165 (Mo. App.1974). Here, the patient chose a time-honored mode of waiver, i.e., by placing her medical condition at issue through her own testimony. *Wells v. City of Jefferson, supra,* 132 S.W.2d at 1010.

■ In his brief, defendant who protested the admission of Curry's records during her subsequent cross-examination argues, "[t]he state was bound by Ms. Curry's answer that she was not treated for gonorrhea ... The medical records were collateral evidence because they were not material to the present case." This demonstrates a misunderstanding of the cross-examination and misses the purpose for which the records were introduced. Wide latitude is allowed on cross-examination in criminal cases and the trial court is invested with broad discretion in determining the extent of such inquiry. *State v. Lue,* 598 S.W.2d 133, 138 (Mo. banc 1980). In this instance the prosecution's inquiries fell within an acceptable range concerning the witness' medical history because of her testimony in direct examination to such matters. *State v. Revard,* 341 Mo. 170, 106 S.W.2d 906, 910 (1937); *Ransom v. Adams Dairy Co.,* 684 S.W.2d 915, 918 (Mo.App. 1985). Impeachment by use of conflicting medical records was proper and defendant mistakenly relies on *State v. Beck,* 785 S.W.2d 714 (Mo.App.1990), for the proposition that the medical records were immaterial. In that instance, evidence introduced by the prosecutor during rebuttal was "collateral evidence interjected by the prosecutor" to improperly attack "defendant's credibility." *Id.* at 717. Such is not this case. The fact of Curry's possible infection by defendant was relevant to the issue of guilt or innocence. While the girlfriend's credibility became suspect by the introduction of the medical records which conflicted with her testimony on direct, this was incidental to the main purpose for the record's introduction, that of proving a fact material to the issue of guilt.

■ Defendant's final attack upon the introduction of the records is premised upon a federal statute, 42 U.S.C. § 247c(d)(5) (Supp.1989), providing that "[a]ll information obtained in connection with the examination, care, or treatment of any individual ... shall not, without such individual's consent, be disclosed except ... as may be required by a law of a State or political subdivision of a State." This applies to those institutions which treat sexually transmitted diseases and receive federal grants and assistance for such operations. Again, defendant had no standing to raise the issue; instead, if there had been a right to object to the disclosure of medical records under the cited section of the code, it would have been Curry's and she made no effort to assert such right. The contention is without merit.

### (B)

■ For his second point, defendant complains the trial court erred in not suppressing evidence of M.E.'s gonorrhea because he had been forcibly treated without having first been tested for that disease at the work house where he was incarcerated. He alleges that when the work house officials forcibly treated him without first determining if he was infected, they destroyed any available proof that he did not have the disease, thus depriving him of a possible defense.

In his motion to suppress, defendant stated, "The St. Louis Medium Security Institution initiated antibiotic therapy to the defendant without ever securing any independent testing as to whether or not the defendant had contracted gonorrhea." During the pretrial motion hearing, no evidence was introduced showing the circumstances surrounding his alleged treatment for the disease. Rather, at the request of defense counsel, the motion was taken "along with the other evidence," and ruled at a later time. We inquire to determine whether the court's decision is supported by substantial evidence. *State v. Johns,* 679 S.W.2d 253, 261 (Mo. banc 1984), *cert. denied* 470 U.S. 1034, 105 S.Ct. 1413, 84 L.Ed.2d 796 (1985).

Defendant's contention that he was treated against his will is not supported by the record. The only evidence on this matter was defendant's testimony and the single reference to the possibility of such treatment appears in defendant's direct examination:

Q: [Defendant's counsel] Now, when you were at the workhouse did you ever receive any kind of treatment for gonorrhea?

A: [Defendant] They called me to the Captain's bench. I went to the nurse in the back, and she said that somebody had called over and said I had to be treated for gonorrhea. I told her wasn't nothing wrong with me, and I haven't took no test yet, so how are they going to give me a test for gonorrhea. I refused to sign and I talked to Captain Casey [2], and told him what had happened, and he asked me "did anybody take you to the clinic or test you for this disease?" I said, "no." He said, "don't take no medication."

With that, the direct examination ended and on cross-examination the only reference to the matter was defendant's explanation for his refusal of treatment. Nothing in his testimony or elsewhere in the record indicates he was treated for gonorrhea by work house officials. His motion to suppress was properly denied.

■ Assuming *arguendo* defendant had been treated against his will without having been first tested for the disease, his contention nevertheless would not have been well taken. If defendant had provided evidence he did not have gonorrhea during the time frame in question, such could have been helpful to his case; however, prison officials are usually under a duty to require that inmates submit to necessary medical treatment in the case of such communicable diseases. 72 C.J.S. *Prisons* §§ 84, 85 (1987). The question would have been whether the work house officials had an affirmative duty to test before treating him. If defendant's chronology were taken as true, the work house officials had been notified by someone, probably personnel at the hospital or perhaps the health department, that defendant was a gonorrhea contact. Apprised of that fact, those officials could have reasonably believed that he was in need of treatment. Although testing first might have been a wiser course, failure to test would not have deprived defendant of any constitutional liberty. We find no authority requiring the officials under these circumstances to have tested defendant for gonorrhea before treatment and that such failure would have implicated constitutional rights.

This case is distinguishable from *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its Missouri progeny. Those cases hold that suppression of evidence favorable to the defendant by the prosecution "violates due process where the evidence is material either to guilt or punishment, irrespective of good faith or bad faith of the prosecution." *Id.,* 373 U.S. at 87, 83 S.Ct. at 1196–1197; *State v. Chaney,* 663 S.W.2d 279, 284 (Mo.App.1983). Here, defendant was not inhibited by incarceration from requesting a test for gonorrhea and the record discloses he refused treatment. He made no showing that work house officials destroyed evidence that might have been helpful to the defense.

■ In general, Missouri rejects placing affirmative duties on law enforcement officials to take the initiative or assist in procuring evidence on behalf of a defendant though he may deem it necessary to his defense. *State v. Snipes,* 478 S.W.2d 299, 302 (Mo.1972), *cert. denied* 409 U.S. 979, 93 S.Ct. 332, 34 L.Ed.2d 242 (1972). In *State v. Estes,* 562 S.W.2d 142 (Mo.App.1978), defendant argued the prosecution had intentionally suppressed evidence by failing to conduct either a fingerprint test upon a weapon or a powder residue test on the victim. Rejecting this notion, the court delineated a clear line between existing, tangible evidence and undeveloped or nonexistent evidence. Prosecutorial suppression of the former is violative of a defendant's due process rights while the latter is not. *Id.* at 144–145. In the case *sub judice,* there is no showing the state destroyed

---

**2.** The identity of this person is not disclosed by either party.

or altered any evidence and the trial court properly denied the motion to suppress.

### (C)

■ Defendant next contends the evidence was insufficient to support the finding of rape, arguing that there was no evidence of sexual intercourse. In this connection the Court must accept as true all evidence and inferences supportive of the verdict and disregard contrary evidence and inferences; viewed in that light, we must determine whether a submissible case was made. *State v. Brown,* 660 S.W.2d 694, 699 (Mo.1983).

Section 566.030.3, RSMo 1986, under which defendant was convicted provides:

A person commits the crime of rape if he has sexual intercourse with another person to whom he is not married who is less than fourteen years old.

"Sexual intercourse" is defined in § 566.010.1(1) as *"any penetration, however slight,* of the female sex organ by the male sex organ, whether or not an emission results." (Emphasis added.) It is defendant's contention the evidence failed to demonstrate that penetration occurred.

■ The victim testified that one night in January of 1987, defendant entered her bedroom, lay down beside her on the bed, pulled her panties down to her knees and inserted his penis into her vagina. Using anatomically correct dolls the nine-year-old victim demonstrated during direct examination that penetration did indeed occur. Through direct and cross-examination, she maintained her story without variation. This was sufficient to submit the issue, for the uncorroborated testimony of a victim will sustain a conviction of rape unless such testimony is so unconvincing and contradictory as to "cloud the mind of the court with doubts." *State v. Hamrick,* 714 S.W.2d 566, 567 (Mo.App. 1986). No such contradictions appear. Though the victim was nine years of age, that in itself does not render the evidence inadmissible or insufficient. *See State v. Fogle,* 743 S.W.2d 468, 469 (Mo.App.1988). Contention denied.

### (D)

■ Defendant's final point on direct appeal is that the trial court erred when refusing defendant's motion to quash the panel and in denying the motion for a mistrial after a venireman made an allegedly prejudicial statement regarding defendant's guilt. The complained of venireman, Marvin Ramsey, was asked by the prosecution in the course of voir dire how he felt about sitting in a case where the victim was a nine year old little girl related to the defendant. Ramsey responded, "Everybody's got some kind of thoughts, *what he did to this nine year old girl."* (Emphasis added.) This response, defendant contends, tainted the array. The venireman was challenged for cause and excused from service after stating he could not be impartial in the case. During the ensuing side bar, defense counsel moved to quash the panel or alternatively for a declaration of mistrial. Both motions were denied but, at the defendant's request, the court instructed the jury as follows: "The jurors are instructed that anything said by a juror does not constitute evidence in this case," and the voir dire continued.

■ The trial court has broad discretion in determining if a jury panel should be dismissed and its ruling should not be disturbed on appeal absent a clear abuse of discretion. *State v. Cotton,* 724 S.W.2d 649, 652 (Mo.App.1986). Usually, disqualification of an individual juror for bias or expression of an opinion is insufficient for challenging the entire array. *State v. Weidlich,* 269 S.W.2d 69, 71 (Mo.1954). To merit quashal, movant must demonstrate that the venireman's questionable responses were so inflammatory and prejudicial that it can be said a right to a fair trial has been infringed. *State v. Harrell,* 637 S.W.2d 752, 757 (Mo.App.1982). Two cases in point make clear that Ramsey's lone comment fell short of that line. In *State v. Taylor,* 324 S.W.2d 643 (Mo.1959), a venirewoman stated, in the presence of prospective jurors shortly before voir dire, that she was ready to give the defendant the maximum sentence and she need not hear the rest of the evidence. The trial court, ex-

cusing the woman, instructed the panel to disregard her comments and in the appellate review, this Court held there had been no abuse of discretion. *Id.* at 648. In *State v. Weidlich,* 269 S.W.2d 69 (Mo.1954), a venireman stated during voir dire, "I don't think I can give a thief a fair trial" and he was stricken from the panel. The trial judge admonished the remaining members to disregard comments made by one of their number as such was not evidence and again, this Court found no abuse of discretion. *Id.* at 71.

In the present case Ramsey was stricken and the trial judge instructed the panel to disregard his comments. The lone remark was not such as to inflame or prejudice the other prospective jurors and we find no abuse of discretion in refusing defendant's motion to quash or for a mistrial. *See State v. Parker,* 476 S.W.2d 513 (Mo.1972).

### APPEAL FROM OVERRULING OF RULE 29.15 MOTION

The only point raised in defendant's Rule 29.15 motion was that the hearing court erred in not finding defendant had received ineffective assistance of counsel at trial. Defendant cites four instances which he contends demonstrate such ineffectiveness.

■ Before reaching those contentions, a procedural matter must be addressed. Defendant properly filed his pro se motion on June 20, 1988. On September 16, 1988, defendant's appointed counsel filed an amended Rule 29.15 motion, which was neither verified nor signed by defendant, contrary to the jurisdictional requirements of Rule 29.15(f). *Malone v. State,* 798 S.W.2d 149 (Mo. banc 1990). The amended motion was a nullity, and we consider only those issues raised in defendant's original motion.

■ When reviewing the trial court's action we are limited to a determination of whether its findings and conclusions are clearly erroneous. Rule 29.15(j). Under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to establish a claim for ineffective assistance of counsel, the movant must show that counsel's performance was so deficient it fell below an objective standard of reasonableness and that this performance prejudiced defendant's case, *id.,* 466 U.S. at 687–688, 104 S.Ct. at 2064–65, and further, that performance is entitled to a strong presumption of reasonableness. *Id.,* 466 U.S. at 689, 104 S.Ct. at 2065.

■ Defendant's first example of counsel's ineffectiveness was his failure to request a continuance to ensure the presence of a "key defense witness." The "key" witness was Willie Evans, defendant's uncle. Defendant asserts that had Evans been called, he would have testified that in January of 1987 when the alleged crime occurred, defendant slept beside him at the victim's home and never stirred from his side during the night. When the trial began, Willie Evans was in New Hampshire and had not been subpoenaed. At the postconviction hearing, Evans testified that had he been contacted to testify for Defendant he would have returned to do so.

Defense counsel testified that her investigators had interviewed Willie Evans and had taken down his statements, that she arranged an appointment to talk to him, but Evans failed to appear. It was not until the day of trial that she learned Evans was out of state. Counsel did not feel that Evans' testimony was necessary to the presentation of the defense and took no further action in this regard.

The selection of witnesses is a question of trial strategy and strategy choices are seldom, if ever, foundations for findings of ineffective assistance of counsel. *Sanders v. State,* 738 S.W.2d 856, 858 (Mo. banc 1987). During the hearing, the state pointed to the fact that Evans' testimony was in part contradictory to defendant's trial testimony. Specifically, Evans testified that defendant only stayed at the victim's home one night in January of 1987, whereas defendant testified he had stayed overnight on three or four occasions. Evans related at the hearing that he slept on the couch while the defendant slept on the floor next to him and no other person was in the room when the parties went to sleep. At trial, the defendant testified he slept on the

couch while Willie Evans slept on the floor and that his aunt also slept on the floor. These inconsistencies were apparently known to counsel before trial and, from this record, we cannot declare she was ineffective in securing Willie Evans as a witness or that her decision prejudiced defendant's cause.

■ For his second allegation of ineffective assistance, defendant complains of counsel's failure to introduce photographs of defendant's sex organs, which he contends would have demonstrated it was physically impossible for defendant to have raped M.E., without damage to her genital tissues. The introduction of such evidence is a matter of trial strategy, which generally is not a foundation for a finding of ineffective assistance of counsel. *Sanders v. State, supra,* at 858. At the motion hearing, trial counsel stated that she did not offer the photographs because "[a]ny photographs that we would show to the jury of the physical size of Terry's sex organ would further inflame them against him, and [trial counsel] was particularly concerned because it was jury-assessed punishment." This strategic choice appears reasonable given the nature of the proceedings, particularly in view of the fact that the offense of rape does not require full penetration; instead, any penetration, however slight, is sufficient for conviction. The medical testimony indicated that some penetration could occur without damage to the victim's genital tissues; hence, the photographs would not have exculpated defendant and there was no demonstrable prejudice resulting from the decision not to introduce them as evidence.

■ Defendant's final contention is that trial counsel was ineffective for failing to object to the "false evidence" (the clinic's medical records) that defendant's girlfriend was treated for gonorrhea. At trial, counsel objected on the basis of hearsay to the introduction of the medical records and the objection was overruled. Defendant now suggests trial counsel should have objected to admission of the records on the ground that they were false.

During cross-examination, the girlfriend admitted that the medical records "jogged her memory" that she had indeed, gone to the clinic, tested positive for gonorrhea and told the clinical staff that the defendant was her only sexual partner. Not once did she assert that the medical records were false. Defendant cites to no authority that would render those medical records inadmissible and counsel cannot be faulted for failing to lodge a nonmeritorious objection. *Schlup v. State,* 758 S.W.2d 715, 716 (Mo. banc 1988).

The trial court's ruling on the post-conviction relief motion was not "clearly erroneous."

Judgments affirmed.

ROBERTSON, HIGGINS, COVINGTON, BILLINGS, and HOLSTEIN, JJ., concur.

BLACKMAR, C.J., concurs in part in separate opinion filed.

BLACKMAR, Chief Justice, concurring in part.

I concur in the affirmance of the conviction.

Once again, I must protest about the sorry situation in which the state furnishes postconviction counsel to the defendant and then denies full review of the trial court's judgment because of the fault of counsel so appointed.[1] The resulting situation is not one in which we can take pride. I would take the opportunity presented us to finalize the judgment insofar as the state courts are concerned, by reviewing the trial court's findings and conclusion on the amended motion.

Failing this, I can only hope that other courts which may have occasion to hear the

---

1. *See, e.g. State v. Vinson,* 800 S.W.2d 444 (Mo. banc 1990) (Blackmar, C.J., concurring in part and dissenting in part); *Smith v. State,* 798 S.W.2d 152 (Mo. banc 1990) (Blackmar, C.J., dissenting); and *Malone v. State,* 798 S.W.2d 149 (Mo. banc 1990) (Blackmar, C.J., concurring in result).

defendant's plea will give these findings and conclusions the weight they deserve.

